THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT A. VAGIL, Defendant-Appellant.

(No. 72-160;

Second District—February 5, 1973.

Robert H. Heise, of Glen Ellyn, and John J. Cogan, of Oak Brook, both for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A jury found defendant guilty of theft in violation of Ill. Rev. Stat. 1969, ch. 38, sec. 16—1(d)(1). He appeals, contending: (1) the court erred in restricting cross-examination of a crucial State's witness; (2) certain evidence was illegally seized and should have been suppressed; (3) the circumstantial evidence adduced by the State did not support a finding of defendant's guilt beyond a reasonable doubt.

The evidence shows that a Cadillac dealership in Lombard was the owner of a 1968 green Eldorado with a white top, vehicle identification number (VIN) H8242518. On May 29 or 30, 1969, the vehicle was found to be missing from the used car lot, and the police were notified.

On May 21, 1970, Ronald Nosal, a detective with the Village of Villa Park, having observed a 1968 Eldorado of the above description with the Illinois license plate number TD6004, investigated the ownership of that vehicle. A check of the license revealed that the automobile was registered to defendant; a check of its VIN indicated that title was in the Cadillac dealership from which it disappeared. The records of the Secretary of State showed that license plates for the automobile had first been issued to defendant in June of 1969. On the basis of this information, a warrant for defendant's arrest was obtained on May 28, 1970.

In possession of the warrant, four officers went to defendant's home where they were informed that he was at work. At that time the automobile in question was clearly visible in the driveway of the house. The officers left the home, but two remained in the area, keeping the car under observation. During their watch, defendant's wife backed the car out of the driveway. As the car moved into the street, one of the officers jumped from the squad car and signaled her to stop. The officers approached the car and one checked the VIN by looking through the wind-

shield, verifying that it was the stolen car in question. As directed, and with the police following, Mrs. Vagil returned the car to the driveway. The car was thereafter impounded. Mrs. Vagil was not arrested.

At the trial, both defendant and his wife testified that defendant had purchased the vehicle in June of 1969 from a man neither was able to name or specifically describe. Defendant explained that he had found an advertisement in the automobile listings of a newspaper, called the telephone number given, and made an appointment to see the car. The man brought it to defendant's home and the parties agreed on a price of $4,850.

Defendant described filling out forms for license plates, application for certificate of title, and having signed the title on the back, as buyer. The seller took the papers, and returned the following day with the car. The purchase price was paid in cash. (Defendant asserted that the money was his share of his grandmother's estate which his father had held for him.) Defendant remembered receiving the license plates, registration, and bill of sale from the man, but not the title. He stated that he never realized he had not received the title, and that, although he had kept the bill of sale for a time, he did not have it at the time of trial. He denied having stolen the car or knowingly exerting unauthorized control over it. Evidence on behalf of defendant indicated that both he and his wife used the car, that it was commonly parked in open view in the driveway of their home, and that defendant regularly had occasion to park it in the vicinity of the Cadillac dealership from which it was stolen.

We first consider defendant's contention that error resulted when the trial court restricted cross-examination of a State's witness. The witness, one Gratzianna who owned an automotive business, testified that he became acquainted with defendant in November or December of 1969 when he repaired a crumpled fender of the Eldorado. He further stated that defendant claimed to have gotten the license plates and identification card for the car through a friend in the Secretary of State's office, and asserted that he could supply them for other vehicles.

Before this witness took the stand, a discussion took place in chambers during which the defense attorney asserted a right to question the witness with regard to his having been arrested while towing a stolen auto. It appears that Gratzianna's arrest and defendant's arrest occurred on the same day; that although Gratzianna's arrest was in a different county, on a charge separate from the instant cause, defendant was involved, he being the one who contacted Gratzianna to do the towing; that within moments after the charge against Gratzianna was stricken with leave to be re-

instated, he *was* informed that he would be expected to testify herein; that Gratzianna was the sole witness to testify to defendant's statement regarding the fraudulent procuring of license plates and registration and that such testimony implied that defendant knowingly exerted unauthorized control over the vehicle with intent to permanently deprive the owner of its use. The defense contended that it should be allowed to elicit the circumstances surrounding Gratzianna's arrest in order to impeach the witness by showing that his testimony could have been motivated by a hope for reward from the authorities. The record indicates that the trial court, *in limine,* rejected this argument.

During cross-examination of Gratzianna, the defense asked if he had been arrested on May 28, 1970. The State's objection was sustained and the jury instructed to disregard the question.

■■ The defense argues that the ruling was incorrect, while the State asserts that a witness may be impeached only by a showing of prior conviction for an infamous crime. When an attempt is made to impeach a witness by an attack on his general character, only proof of conviction for infamous crimes is admissible. However, the fact that a witness has been charged or arrested for a crime may be inquired into when such fact may reasonably tend to show that witness' testimony might be influenced by interest, bias, or a motive to testify falsely. (*People v. Mason,* 28 Ill.2d 396, 400 *et seq.* (1963); *People v. Velez,* 72 Ill.App.2d 324, 329-332 (1966); *People v. Beard,* 67 Ill.App.2d 83, 87-88 (1966).) The circumstances herein are sufficient to indicate that Gratzianna may have been so influenced.

The State asserts that, even under the application of this rule, the jury had been, during the course of testimony, adequately apprised of the witness' arrest. It is additionally stated that while, on direct examination, Gratzianna answered that he had obtained no favors or promises for his testimony, defense failed to cross-examine on this point.

■■ We are not persuaded that the possible inference of bias on the part of the witness was clear to the jury from the mere questions regarding his arrest or that defense's cross-examination into the area of promises received by the witness would have been fruitful without the foundation of arrest and the subsequent dropping of the charges with leave to reinstate. Gratzianna's testimony established a crucial portion of the State's case and the defense should have been allowed to impeach him by a showing of any interest or bias resulting from the fact of his arrest and the subsequent striking of the charge. The trial court's restriction of cross-examination on this issue constituted reversible error. *People v. Barr,* 51 Ill.2d 50 (1972).

730

Since this case will be remanded for a new trial, we also consider defendant's contention that substantial error resulted from failure to suppress evidence of the auto in question.

██ Defendant asserts that the vehicle was unconstitutionally seized, citing as authority several decisions of the United States Supreme Court. Those cases, however, involve evidence obtained as a result of a search and are inapplicable in the instant case where there was no search, no prying into hidden places. (*People v. Bombacino,* 51 Ill.2d 17, 22 (1972); *City of Decatur v. Kushmer,* 43 Ill.2d 334, 338 (1969).) Rather, the automobile in question was, at all relevant times, within ·open view of the officers. Given the prior investigation of the matter, the officers had reasonable cause to believe that the vehicle being driven by defendant's wife was the same one stolen from the Cadillac dealership the previous year. Where the contraband, in plain view of the police on a public street, was observed being driven away, it was permissible for the police to seize the vehicle, and there was no error in admitting that evidence at trial. (*People v. Joyner,* 50 Ill.2d 302, 310-311 (1972); *People v. O'Connell,* 30 Ill.2d 603, 610 (1964).) We do not believe that *Coolidge v. New Hampshire,* 403 U.S. 443 (1971), relied upon by defendant, affects this holding. *People v. George,* 49 Ill.2d 372, 378-379 (1971).

It is unnecessary to consider defendant's reasonable doubt contention as its resolution does not affect the retrial of this case.

For the reasons assigned, the conviction will be reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded for retrial.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.