THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY RAGAN *et al.,* Defendants-Appellants.

(No. 61057; )

First District (4th Division)—October 22, 1975.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and G. Severe Cole, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendants, Larry Ragan and Douglas Johnson, were indicted on the charge of armed robberies of Sam Williams and Armstrong Walker. The defendants were represented by counsel and waived trial by jury. They were found guilty of both charges of robbery and were sentenced to serve a term in the penitentiary of four to eight years. The defendants appeal only from their convictions for the robbery of Sam Williams.

A review of the record indicates that on December 30, 1973, the defendants, in separate incidents, allegedly committed two robberies. The first criminal act occurred between 6 and 6:30 p.m. in which one Sam Williams was accosted by three men while walking to his home located on the south side of Chicago. At the trial, Williams, who identified the

defendants as two of the participants, testified that the taller assailant (the defendant Ragan), who directly faced him, held a gun on him while the other two men took his knife, a cigarette lighter, a money clip and several dollars out of his pockets. Williams stated further that he observed these men for approximately five or six minutes and, just before they fled, the shortest of the three (the defendant Johnson) took the bottle of gin he was carrying, drank from it and returned the bottle to him. While this was occurring, both defendants spoke to Williams and the defendant Ragan informed him not to holler. After the assailants departed, Williams reported the robbery to the police and gave them a description of the robbers.

Approximately 45 minutes subsequent to the above encounter, one Armstrong Walker was approached by the two defendants on the south side of Chicago. When he responded in the negative to Johnson's inquiry concerning whether he had any money, Ragan stuck a gun in his midsection. Johnson, whom Walker described as the smaller of the two, then proceeded to remove Walker's money and a datebook from his pockets. An off-duty Chicago policeman, Charles Jackson, observed this altercation and, after identifying himself, arrested the defendants who were then transported to the police station.

On the same evening of both robberies, the police contacted and took Williams to the police station. Upon entering the station, Williams, while being escorted to a room, observed the defendants standing near the front desk. After a brief period, Williams returned to the front room and identified the defendants as two of his three assailants. At the trial, the trial judge sustained the defendants' motion to strike and suppress the "show-up" testimony at the police station, but ruled that the in-court identifications of the defendants were valid since Williams had "ample opportunity" to view them during the course of the robbery, thereby establishing an independent origin for the in-court identification.

On appeal, the defendants contend that the conviction should be reversed because the State failed to establish the independence of Williams' in-court identification from the suppressed "show-up" identification. In support of their position, the defendants posit three factual considerations evincing Williams' lack of opportunity to view the faces of the defendants during the course of the robbery, thus precluding an independent in-court identification. They argue that (1) although Williams may have observed the three men for five to six minutes, his observation is somewhat suspect since each of the three assailants were standing in a different position relative to Williams, thereby preventing him from observing them simultaneously; (2) since the incident took place in the doorway of an abandoned store at 6:30 p.m. on December 30, 1973, we should take judicial notice that it is quite dark in Chicago

at that time; and (3) the only description of the assailants proffered by Williams to the police was that one was about six feet tall while the other two were shorter. We are not in accord.

■■ It is well settled in Illinois that even though an out-of-court identification procedure may have been unnecessarily suggestive, a subsequent in-court identification does not amount to a denial of due process and is admissible if it has an origin independent of the tainted pretrial identification. (*E.g., People v. Connolly*, 55 Ill.2d 421, 427, 303 N.E.2d 409, 412; *People v. Patrick*, 53 Ill.2d 201, 206, 290 N.E.2d 227, 230.) In determining whether an identification by a witness was independent and free from suggestive influence, the witness' opportunity to observe his offenders or a lack of opportunity is extremely relevant. (*People v. Williams*, 52 Ill.2d 455, 462, 288 N.E.2d 406, 410). Moreover, precise accuracy in describing physical characteristics and wearing apparel of an assailant is unnecessary where an identification is positive. (See, *e.g., People v. Catlett*, 48 Ill.2d 56, 63, 268 N.E.2d 378, 381-82; *People v. Jackson*, 23 Ill.App.3d 945, 953, 320 N.E.2d 591, 597.) In ascertaining whether an in-court identification is positive, the test employed is whether the witness was close enough for a sufficient length of time under conditions adequate for observation and thus had the opportunity to see, observe and later to be able to make the identification. *People v. Doss*, 26 Ill.App.3d 1, 16, 324 N.E.2d 210, 221.

■■ In light of the above enunciated legal precepts, our decision evolves around whether the trial court's finding that there was "ample opportunity" in the instant case for an in-court identification of independent origin was contrary to the manifest weight of the evidence. In our opinion, it was not. It was undisputed that Williams observed his assailants at close range for five to six minutes. Moreover, with reference to the respective defendants, he testified that he saw Ragan's face when he was initially accosted and Johnson's face when Johnson took the bottle of gin from him. Williams further expounded that he had conversed with both defendants during the course of the robbery. Furthermore, despite the brevity of Williams' description of his assailants which he gave to the police, he unequivocally identified the defendants at the trial. We therefore conclude that there was clear and convincing evidence that Williams' identification of the defendants had an origin independent of what the trial court found to be a suggestive and tainted "show-up" procedure.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.