THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FELIX CEPOLSKI, Defendant-Appellant.

First District (2nd Division)   No. 78-1395

Opinion filed December 11, 1979.

Michael J. Goldstein, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Mary A. Jischke, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Felix Cepolski, along with his brother and co-defendant, Peter Cepolski, were charged by indictment with the rape and armed robbery of Mattie Kolwitz and the armed robbery of Richard Donta. During a bench trial in the circuit court of Cook County, the court entered a directed judgment in favor of Peter Cepolski on all charges and in favor of defendant on the rape charge. Defendant's trial on the armed robbery charge continued and the court found him guilty after hearing all the evidence. Defendant was sentenced to imprisonment for not less than 4 years nor more than 4 years and 1 day.

The issues on appeal are: (1) whether defendant was proved guilty beyond a reasonable doubt; (2) whether the trial court erred in restricting defense counsel's cross-examination of one complaining witness as to the circumstances surrounding his arrest on the same night the armed robbery allegedly occurred; (3) whether the court erred in finding that the in-court identification of defendant by one witness had an origin independent from a tainted pre-trial identification; (4) whether the court erred in admitting evidence, in rebuttal, that an alleged co-offender was at the scene of an accident involving defendant's automobile on the morning after the alleged armed robbery; and (5) whether the court considered evidence outside the record in finding defendant guilty. The pertinent facts follow.

Prior to trial, a hearing was held on defendant's motion to suppress his identification by Richard Donta and Boyd Pletcher. Donta testified that on September 4, 1974, he was living with his mother, Mattie Kolwitz, in Forest Park, Illinois. Two of Donta's friends, Pletcher and John Linzemann, were also staying with him at the time. Early in the morning of September 4, Donta's home was invaded and he and his mother were robbed. Later that day, Donta viewed over 200 photographs at the Forest Park police station, but he could not make an identification. Some days later, Donta was shown 8 or 10 photographs of white males who were about the same age. Donta testified that the photographs bore no names and the police never suggested that he choose any particular photographs. Donta picked out two men, one of whom was defendant. Although Donta did not view a show-up or lineup involving defendant, he said that he might have seen defendant at the police station, but only after he had already picked out his photograph. Donta admitted being a heroin

addict but testified that he was not under the influence of drugs at the time he viewed the photographs.

Boyd Pletcher testified that he also examined police photographs on the morning after the robbery, but he did not identify anyone. On September 12, Sergeant Doss of the Forest Park police showed him two or three photographs and said, "we have the guys." Pletcher selected two photographs, one of which was of defendant. Doss then took Pletcher to defendant's cell and called defendant's first name, Felix, at which time Pletcher again identified defendant as one of the armed robbers.

The trial court denied defendant's motion to suppress his identification by Donta; defendant does not attack this ruling on appeal. The trial court, however, apparently did rule Pletcher's out-of-court identification inadmissible, because the court proceeded to hold a hearing to determine whether Pletcher would be permitted to make an in-court identification of defendant, based on an origin independent from the overly suggestive pretrial identification. Pletcher testified that on September 4, 1974, at 12:15 a.m., he was at Donta's house with Donta, Mattie Kolwitz, and John Linzemann, watching television in the living room. There was a knock at the back door; Donta answered it, but returned to the living room alone. About 10 or 15 minutes later, there was another knock on the back door, and this time Pletcher went into the kitchen to answer the door. The kitchen was well lit. Pletcher asked who was there and a man answered "Chuck." Pletcher opened the door and two men, one carrying a shotgun, entered. Pletcher testified that one of the men was Charles Koblick, while in court he identified the other man, the one carrying the shotgun, as defendant. Koblick asked for Rich (Donta). Pletcher went into the living room and told Donta that two men were there to see him. From where Pletcher was then sitting in the living room, he had a full, unobstructed view of the two men talking to Donta for 3 to 5 minutes, with the exception of no more than 15 seconds.

Pletcher testified that Koblick then grasped the barrel of the shotgun while defendant held it by the butt. They pointed the shotgun at Pletcher and told him to get up against the wall. A masked man entered the house. Pletcher was told to lie on the floor, face down, or he would be shot. He complied, and someone tied him up. The house was ransacked for about 15 more minutes and then the intruders left. Pletcher testified that during the afternoon of September 3, he had smoked marijuana, but he was not under the influence of that or any other drug at the time of the robbery. He also disclaimed over being a narcotics addict.

The trial court denied defendant's motion to suppress his identification in court by Pletcher. At the ensuing trial, the following pertinent testimony by Donta, Pletcher, and Kolwitz was given, according to the respective parts they played in the incident at bar. On September

234

4, 1974, at about 12:15 a.m., Kolwitz was upstairs asleep in bed, while Donta, Pletcher, and Linzemann were watching television downstairs in the living room. Donta admitted that he had been convicted of a felony sale of drugs, that he was a heroin addict, and that he had used heroin on the afternoon or evening before the robbery. There was a knock at the back door. Donta went into the kitchen, which was lit by flourescent lights, and answered the door. He observed two men, defendant, whom he identified in court, and Koblick. The two asked for "Rick," but because Donta uses the name "Rich," he said Rick was not there. He closed the door and went back to the living room.

There was a second knock at the back door, according to Donta, 5 minutes after the first, but according to Pletcher, 10 or 15 minutes later. This time Pletcher answered the door. The kitchen lights were still on. When Pletcher opened the door he saw defendant, whom he pointed out in court, carrying a shotgun and accompanied by Koblick. The two asked for Rich. Pletcher went into the living room and told Donta someone was there to see him. Donta went and stood with Koblick and defendant, whom he observed carrying a shotgun, in the doorway between the kitchen and living room. While Donta and one of the men conversed, Pletcher sat in the living room, watching the men.

Defendant then lifted the shotgun by its "handle" while Koblick held its barrel. They told Donta to lie on the floor, which he did. Pletcher was told to get up against the wall. A masked man carrying a knife entered the house and pushed Pletcher against the wall. The masked intruder emptied Pletcher's pockets and removed his socks while holding the knife on him. Pletcher was told to lie on the floor and was tied up. The masked man then made Donta stand up, telling Donta that he wanted some money and drugs. Donta replied that he did not have any drugs and the only money he had was in his mother's purse. They went upstairs, where Donta's mother, Mattie Kolwitz, was sleeping. She awoke and saw a man holding her son around the neck. Donta told her to go back to bed, but the other man instructed her to accompany them back downstairs. Kolwitz did not remember stating before the grand jury that there was a knock on the door or that three men carrying guns forced their way into her house.

When they were again downstairs, Kolwitz and Donta saw Pletcher and Linzemann tied up and lying on the floor. Donta was tied up and accosted with the knife by the masked man, who continued asking for drugs and money in the face of Donta's denials. Two of the men then took Kolwitz upstairs. She could not see their faces and could not identify them. She did not remember previously stating that Koblick forced her upstairs. Kolwitz gave her purse, containing $100, to one of the men. One of the men forced her to have intercourse; she was also forced to perform fellatio, which she had never revealed to anyone before because she was

ashamed and embarrassed. After she dressed, her assailant placed a rug over her head, took her downstairs, and tied her up along with Donta, Pletcher and Linzemann.

The three intruders left, after spending a total of about 20 minutes in the house. The victims untied themselves and called the police. They observed that a stereo and two television sets had been taken, and Donta testified that a ring had been taken from him. Kolwitz was taken to a hospital and examined by a doctor who, the parties stipulated, could testify to the presence of sperm in her vagina. Later that morning, Donta went to the Forest Park police station and viewed hundreds of photographs, but did not identify anyone. A few days later he was shown 7 to 10 more photographs, from which he identified Koblick and defendant.

In addition to Kolwitz, Donta, and Pletcher, Franklin Locke also testified during the State's case-in-chief. He stated that on the evening of September 3, 1974, he went to Peter Cepolski's house with Koblick. Peter Cepolski asked him where Donta lived, and Locke told him. Locke also gave Peter a name by which he could get Donta to let him into the house. Locke testified that Peter said he wanted to stab Donta in the heart.

Locke left Peter's house and returned the next morning, September 4. Peter said that he had robbed Donta's house and taken two televisions, a stereo, and $100. Peter also admitted wearing a mask and asking Donta for all his money and drugs. Locke then testified that he had been convicted of burglary, attempted burglary, and possession of heroin and of a hypodermic needle.

On cross-examination, Locke admitted having told defendant's attorney that he was so high on heroin and alcohol on September 3 and 4 that he could not recall anything that took place on those days. He also told defendant's attorney that he gave a statement to the police because he wanted to get out of the police station so he could get a fix, although he then testified that that might have been on another occasion. Locke stated that he was a heroin addict and sometimes obtained heroin from Donta. He also testified that he asked defendant's attorney if he could be charged in connection with the robbery, but he was never arrested and at trial, in response to defense counsel's specific question, he stated that no one from the State's Attorney's office ever indicated to him that he might be charged in connection with the robbery if he did not testify.

After the State rested its case-in-chief, both defendants moved for a directed judgment. The trial court commented that Locke's testimony was completely incredible and sustained Peter Cepolski's motion on the armed robbery charge. The court also entered judgment in favor of both defendants on the rape charge, on the ground that the victim could not identify the man who raped her. However, the court denied defendant's

motion on the armed robbery charge, stating that Donta and Pletcher's testimony was corroborating except for minor inconsistencies.

Defendant presented an alibi defense. He testified that he left his place of employment in Chicago at 12 noon on September 3, 1974, because he was tired. A friend and he had a few drinks together at a bar in the area. Defendant then left his friend and headed for Cicero, a Chicago suburb in nearly the opposite direction from his home, in the hope of finding his brother-in-law, who was a bartender somewhere in Cicero. Defendant visited many bars in the Cicero area, having one or two drinks and moving on. He continued drinking until 8 a.m. on September 4, when he became involved in an automobile accident and was arrested by the Cicero police for driving while intoxicated. He denied ever having robbed Donta or having been at his house. He also denied that Koblick was ever in his car on September 3 or 4, though he admitted having met Koblick.

Defendant was arrested for armed robbery 6 or 7 days after the incident by Sergeant Doss of the Forest Park police. While defendant was in his cell at the police station, he was shown to Pletcher. Defendant later saw Donta at the police station.

Defendant called Sergeant Doss as a witness. Doss' testimony reflected that Donta and Pletcher had told him substantially the same story as their testimony in court, except that Pletcher had told him that one of the intruders had put the shotgun to his head, and Donta had never said that anything was taken from his person. There were also some minor discrepancies between Doss' report and the testimony, which he explained were due to the fact that he prepared his report 12 days after the robbery, as a summary based on his recollection and notes.

The State called Sergeant Doss as a rebuttal witness. Doss identified a photograph as being one of Koblick, over defendant's objection that it was not proper rebuttal. The assistant State's Attorney stated that he was laying a foundation and would tie it up with his next witness; the court reserved its ruling. The State then called Officer Connerty of the Cicero police. Connerty responded to a traffic accident at approximately 8:10 a.m. on September 4, 1974. He identified defendant as the person driving the car involved. The parties stipulated that defendant was drunk at the time. Connerty was then shown the photograph that Sergeant Doss had identified as being of Koblick. Connerty said that he saw the man pictured standing with a group of people gathered at the accident involving defendant's car. However, he never saw Koblick in defendant's car.

The parties rested and, after hearing arguments, the trial court found defendant guilty of armed robbery. We will discuss other occurrences at trial as they are pertinent to the issues raised on appeal.

■■ Defendant first argues that he was not proved guilty beyond a reasonable doubt. It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be accorded their testimony, and the inferences to be drawn from the evidence, including the adequacy of the witnesses' opportunity to observe their assailants; a reviewing court will not substitute its judgment for that of the trier of fact unless the evidence is so unsatisfactory, improbable, or implausible as to justify a reasonable doubt of the defendant's guilt. (*People v. Davis* (1977), 53 Ill. App. 3d 424, 430, 368 N.E.2d 721, citing, *e.g.*, *People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) We find that there was ample evidence to support the trial court's finding that defendant was guilty in the case at bar. Without reiterating the testimony, two eyewitnesses observed defendant at close range for 3 to 5 minutes under excellent lighting conditions, and positively identified defendant in court. Moreover, their testimony was detailed, convincing, and corroborating to a great extent. In addition, though she was not able to identify any of her assailants, Mattie Kolwitz further corroborated some of the events of that evening. It is well established that a positive identification by a single witness who is credible and who had an adequate opportunity to observe the defendant is sufficient to establish guilt beyond a reasonable doubt, even though the testimony is contradicted by the accused. *E.g.*, *People v. Davis* (1977), 53 Ill. App. 3d 424, 430; *People v. Mitchell* (1975), 34 Ill. App. 3d 311, 321, 340 N.E.2d 226.

■■ Defendant claims that the credibility of the prosecution's witnesses was destroyed through impeachment and their testimony was riddled with inconsistencies. As to the alleged inconsistencies, the State's brief adequately establishes that they either do not exist at all, or they amount to only very minor discrepancies in the precise sequence and timing of events. In such a case, a reasonable doubt of guilt is not created and the defendant's conviction should not be disturbed. *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 598, 338 N.E.2d 56.

As to the credibility of the witnesses, defendant states that Franklin Locke's testimony was totally unworthy of belief, as the trial court indeed found. However, because Locke's testimony only tended to incriminate the co-defendant, Peter Cepolski, and in no way contributed to the court's finding that defendant was guilty, Locke's credibility is inconsequential on this appeal.

■■ Defendant emphasizes that Richard Donta was an admitted felon and heroin addict, who even used heroin on the afternoon before the incident at bar. Similarly, Boyd Pletcher, though not a drug addict, admitted having smoked marijuana during the afternoon before the night of the robbery. We agree with the cases cited by defendant that there is a need for close scrutiny where the State's case rests upon the credibility of

a narcotics addict. (See *People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498; *People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E.2d 649.) However, while the fact that the complainant is a narcotics addict is an important factor in determining his credibility, even if it is shown that the complainant was in fact using drugs at the time of the incident, this consideration alone does not necessarily destroy his credibility. (*People v. Mitchell* (1975), 34 Ill. App. 3d 311, 321, 340 N.E.2d 226.) The *Galloway* and *Bazemore* cases cited by defendant are factually distinguishable, in that in each case the State's key witness was not only a narcotics addict, but a police informer who actively participated in the alleged sale of narcotics. In addition, there was little (*Galloway*) or no (*Bazemore*) corroboration for the addict's testimony. In the case at bar, the trial court was apprised of Donta and Pletcher's use of drugs, yet found their testimony convincing and corroborating in great detail. They were not participants but victims, and while the court considered their use of drugs as affecting the weight to be given their testimony, he noted that it did not render it "open season" for them to be the victims of armed robberies.

■ In contrast to Donta and Pletcher's testimony, defendant's alibi testimony was sketchy and unbelievable. After leaving his place of employment at noon because he was tired, he purportedly spent the next 20 hours drinking in numerous taverns in the opposite direction from his home. He could not remember where he was at the approximate time of the armed robbery, nor did he establish any corroboration for his alibi. He denied that Charles Koblick was ever in his car on September 3 or 4, yet on rebuttal Koblick was placed at the scene of an accident involving defendant's car. It was for the trier of fact to determine the credibility of the defendant's alibi testimony, just as that of the testimony of the other witnesses. (*People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 598, 338 N.E.2d 56.) The trial court was justified in rejecting defendant's testimony and accepting that of the complaining witnesses, which was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant next contends that the court erred in restricting his counsel's cross-examination of Donta as to Donta's arrest on the night of the armed robbery. During cross-examination, Donta admitted being arrested for possessing stolen property in his home. The State objected when defense counsel asked what that property was. The defense offered to prove that the police report made the night of the robbery showed that Donta was arrested and charged with possession of drugs and weapons that were found in the house. The State responded that Donta was never convicted. Although the transcript is somewhat garbled, defense counsel essentially argued that whether or not there was a conviction, he had a right to go into the circumstances surrounding the victim's being charged

by the police on the same night the victim was making his complaint. When the court indicated an inclination to sustain the objection, however, defendant's attorney argued only that it was germane to the court's consideration of Donta's credibility that drugs were recovered from his house that night. The court ruled that unless defense counsel could show a conviction, the court was not going to permit him "to explore it."

While evidence of an arrest, as opposed to a conviction, is ordinarily inadmissible "to impeach credibility generally, an arrest or charge of a crime may be shown, or inquired into, where it reasonably could tend to show that the witness's testimony might have been influenced by interest, bias, or motive to testify falsely." *People v. Galloway* (1974), 59 Ill. 2d 158, 163, 319 N.E.2d 498; see generally *People v. Mason* (1963), 28 Ill. 2d 396, 400-01, 192 N.E.2d 835.

■■ The State relies on *People v. Merritt* (1973), 16 Ill. App. 3d 72, 305 N.E.2d 579, and *People v. Williams* (1977), 55 Ill. App. 3d 752, 370 N.E.2d 1261, for the proposition that defense counsel's failure to mention that he was using Donta's arrest to show bias or motive, rather than to impeach his credibility generally, rendered the trial court's restriction of cross-examination proper. In *Merritt* and *Williams*, however, there was no indication the complainants' arrests were in any way related to the crimes for which the defendants were being tried. Thus, the details of those other arrests had no bearing in the absence of any suggestion that they resulted in a promise of leniency or other influence on the part of the State. (See *People v. Williams* (1977), 55 Ill. App. 3d 752, 758.) It is true that in the case at bar, defense counsel never asked or attempted to ask any question suggesting Donta's testimony might have been motivated by prosecutorial influence, although he did ask Locke such questions. Nevertheless, we believe the fact that the complaining witness was arrested the very night of his complaint sufficiently links the two to raise an implication of possible interest or motive, particularly in view of the ultimately favorable disposition of the charges against the complainant. While the purpose of defense counsel's proposed line of inquiry was not explicitly made apparent (compare *People v. Whitlow* (1977), 48 Ill. App. 3d 425, 428-29, 363 N.E.2d 102), we believe the circumstances themselves were such as to require the trial court to permit further inquiry into the connection between the complaint and the arrest. The trial court therefore erred in restricting defense counsel's cross-examination as to the circumstances surrounding Donta's arrest.

The State argues that the trial court did, at least, permit the fact of the arrest to be established, but at least one case has held that insufficient in a jury trial to cure the error committed by restricting cross-examination. (*People v. Vagil* (1973), 9 Ill. App. 3d 726, 729, 292 N.E.2d 557.)

Nevertheless, we find that the error was harmless. Pletcher gave testimony substantially similar to Donta's both as to the events at bar and defendant's participation therein. In addition, Mattie Kolwitz's testimony corroborated some of the events of that evening. Thus, even without Donta's testimony, there was ample evidence upon which the court could find defendant guilty beyond a reasonable doubt. (See *People v. Whitlow* (1977), 48 Ill. App. 3d 425, 429, 363 N.E.2d 102.) In contrast, in all three cases relied upon by defendant in which the trial court's restriction of cross-examination was found to be reversible error, the credibility of the witness who had been arrested was crucial to the State's case. See *People v. Galloway* (1974), 59 Ill. 2d 158, 163, 319 N.E.2d 498; *People v. Garrett* (1976), 44 Ill. App. 3d 429, 438, 358 N.E.2d 364; *People v. Vagil* (1973), 9 Ill. App. 3d 726, 729, 292 N.E.2d 557.

■■ Defendant next argues that the trial court erred by allowing the in-court identification of defendant by Pletcher. It is well settled in Illinois that even though an out-of-court identification procedure may have been overly suggestive, a subsequent in-court identification will be admissible if it has an origin independent from the tainted pretrial identification. (*E.g., People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409.) The test is whether the witness was close enough to the defendant for a sufficient length of time under conditions adequate for observation, and thus had the opportunity to see, observe, and later make the identification. (*People v. Ragan* (1975), 33 Ill. App. 3d 151, 153, 337 N.E.2d 432.) In the instant case, Pletcher first saw defendant face-to-face when he admitted defendant into a well-lit kitchen. He then retired to the living room, from which he could see defendant under good lighting, at close range, and for approximately 3 to 5 minutes with the exception of only 10 to 15 seconds. This was clearly adequate to enable a positive identification, and thus to permit an in-court identification, despite the tainted pretrial procedure. See, *e.g., People v. Ragan* (1975), 33 Ill. App. 3d 151, 337 N.E.2d 432.

Defendant also contends that the trial court erred in admitting evidence that Koblick was at the scene of an accident involving defendant's automobile later in the morning of the robbery. At trial, defense counsel objected on the ground that this was not proper rebuttal. Rebuttal testimony is that which is adduced to explain, repel, contradict, or disprove evidence given by the defendant, and where defendant puts forth testimony in support of a defense, the State may offer any evidence which tends to contradict or disprove that defense. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 538, 362 N.E.2d 14.) Admission of rebuttal testimony rests within the sound discretion of the trial court. (*E.g., People v. Veal* (1978), 58 Ill. App. 3d 938, 967, 374 N.E.2d 963.) In the case at bar, defendant testified that he was drinking alone through the night and that

Koblick was never in his car. The testimony offered in rebuttal to the effect that Koblick was present at the scene of an accident involving defendant's car, in conjunction with testimony that Koblick was one of the participants in the armed robbery, tended to rebut defendant's testimony. Therefore, even though it did not absolutely disprove defendant's position, the testimony was properly admitted in rebuttal.

Defendant argues on appeal that the State failed to lay a foundation for the admission of Koblick's photograph into evidence. Defendant never advanced this particular ground for objection in the trial court, at least in these terms, and thus arguably it has been waived. (See *People v. Cannon* (1975), 25 Ill. App. 3d 737, 323 N.E.2d 846.) In any event, defendant's argument is without merit. Defendant relies on *People v. Donaldson* (1962), 24 Ill. 2d 315, 181 N.E.2d 131, in which a photograph was introduced into evidence to support the State's contention that the defendant was not subjected to brutality while in custody. Because the defendant's appearance at a specific point in time was the key question, failure to establish when the photograph was taken rendered its admission erroneous. In contrast, the photograph in the case at bar was only used to establish first, that it was a picture of Koblick (by Sergeant Doss), and second, that Koblick was present at the scene of defendant's accident (by Officer Connerty). Because there was no contention that Koblick's appearance had changed, the only other possibly relevant foundation question would have been how Doss knew Koblick. Nevertheless, all the foundation that was required was that the witness have knowledge of what or whom the photograph portrayed and that he testify to this knowledge, which he did. (See McCormick, Evidence §214, at 530-31 (2d ed. 1972).) Thus, defendant's contention in this regard is without merit.

Finally, defendant claims that the trial court improperly considered evidence outside the record in finding him guilty. Defendant points to the trial court's following statement as to Koblick, "who I understand is serving time," made immediately before the court pronounced defendant guilty. The context in which the comment was made, beginning just after the parties' closing arguments, is as follows:

> "THE COURT: Without repeating what was said, there was so much corroboration in the case of the testimony of Donta and Pletcher, they both testified to the knock on the door, that Donta answered; they both testified to the second knock on the door; both testified that one of the men had red hair, one blond hair; both testified one was masked; both testified about the shotgun; both testified about the tieing up and the cord which corroborated by the picture, the cord was. There were so many points, that both witnesses testified to.

I, as the trier of fact, observed the witnesses while they were testifying and I passed on their credibility and I feel that they were telling the truth.

And when, Mr. Price, [defense counsel], you say no inference can be drawn from the presence of Mr. Koblick in Cicero; the alleged offense occurred in Forest Park, one o'clock in the morning and lo and behold, eight o'clock in the morning and the defendant *is involved in an accident and who is there on the scene in Cicero,* miles away from where the alleged incident occurred but Koblick the co-defendant, *who I understand is serving time.*

I think there is sufficient evidence before me to enter a finding of guilty. I am convinced beyond a reasonable doubt." (Emphasis added.)

■ While it is true that in a bench trial of a criminal case, the trial judge will be presumed to have considered only competent evidence in arriving at the judgment, this presumption is overcome if it affirmatively appears from the record that evidence outside the record was considered by the court. (*E.g., People v. Mankowski* (1975), 28 Ill. App. 3d 641, 644, 329 N.E.2d 266.) The question here is whether it affirmatively appears from the passage quoted above that the court relied on his understanding that Koblick was serving time in finding defendant guilty. We think not. Defendant relies on *People v. Jones* (1974), 18 Ill. App. 3d 198, 309 N.E.2d 776, but in that case the court explicitly based its finding in part on evidence not in the record; the trial judge's comments clearly indicated that he considered testimony from a pretrial hearing that was not adduced at trial. (See also *People v. Harris* (1974), 57 Ill. 2d 228, 231, 314 N.E.2d 465 (trial judge made his own investigation of the defendants' attorney as to whether the defendants had previously told their alibi to the Public Defender, and when told that the attorney did not have that knowledge, the judge stated, "Then I can't believe them.").) We believe this case is closer to *People v. Collins* (1974), 21 Ill. App. 3d 800, 805-06, 315 N.E.2d 916, in which the court referred to two officers who were waiting to testify after finding the defendant guilty on the basis of the testimony of the complainant alone. The court in *Collins* held that the court's statement was mere surplusage that had no effect on the court's decision, and the defendant had not affirmatively shown that the court considered evidence outside the record. Similarly, in the case at bar, although the trial court's comment should not have been made, we believe that at most it was a parenthetical reference which, though unhappily interposed in the court's statement of reasons for his ruling, did not demonstrate that the court was influenced thereby in finding defendant guilty. Rather, the court based its finding on the testimony of

Donta and Pletcher, as well as the presence of Koblick on the scene of defendant's accident, which we have already held was properly established.

Accordingly, for the foregoing reasons, defendant's conviction for armed robbery is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.