2024 IL App (1st) 231764-U
Order filed: December 19, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-1764

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 20 CR 60123 |
| ERNEST DIXON, | ) | Honorable Ursula Walowski, Judge, presiding. |
| Defendant-Appellant. | ) | |

---

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Lyle concur in the judgment.

**ORDER**

¶ 1     *Held*:   Defendant's conviction for aggravated battery is affirmed, where he was proven guilty beyond a reasonable doubt and the remaining, unpreserved claims raised on appeal do not amount to plain error.

¶ 2     Defendant-appellant, Ernest Dixon, appeals from his conviction for aggravated battery. For the following reasons, we affirm.

¶ 3     In September 2020, defendant was charged by indictment with three counts of aggravated battery. Prior to trial, the State elected to proceed solely on the first count of the indictment, which generally alleged that on or about April 29, 2020, defendant struck the victim, Joseph Coleman, causing great bodily harm, and that the victim was 60 years of age or older. The matter proceeded to a jury trial.

¶ 4    At trial, Coleman testified that he was born in 1944 and was 76 years old in April 2020. He had lived in an apartment in a senior living building in Chicago since 2007. He last worked in 2018 as a security guard, but had been previously employed in various other capacities. Coleman had known defendant for 20 to 30 years, since defendant was a teenager.

¶ 5    On the morning of April 29, 2020, Coleman was in his apartment with defendant and a woman. The three were socializing, drinking and smoking cocaine. Defendant and the woman had brought the cocaine to Coleman's apartment. At some point, defendant decided to purchase more cocaine, and he asked Coleman to leave and make the purchase because it was easier for Coleman, a resident, to get back into the senior living building. Defendant gave Coleman some money, Coleman left and made the purchase, and he returned about 15 minutes later. Defendant left the apartment, and the woman left soon thereafter.

¶ 6    Coleman then left his apartment to go to the store, and later returned to his building with another man named Sam. Upon walking into the lobby of his building, Coleman saw defendant leaning over the front desk talking to the security guard. Coleman remembered defendant walking toward him, and after that he lost consciousness and he next remembered waking up in the hospital.

¶ 7    Coleman testified that he had previously viewed a video from a surveillance camera located in his building, and that the video accurately depicted what occurred on April 29, 2020, when he returned to his building's lobby with Sam. The video was entered into evidence without objection and played for the jury. In the video, which did not include audio, defendant is first seen leaning over the security guard's desk before approaching Coleman. Defendant—quite clearly a much larger man—then hits Coleman a single time in the face, and Coleman falls into a wall and then onto the floor outside the view of the camera. The security guard and Sam intervene, and defendant is soon seen leaving the lobby.

¶ 8    After being hit, Coleman was admitted to the hospital. He had a large, swollen knot on his head that looked like a cucumber. The doctors kept Coelman at the hospital for three days for observation and testing, as they had a concern that defendant might have "blood on the brain." As a result of being hit, Coleman was left with hearing and vision problems that precluded him from working and still affected him at the time of trial in October 2022. Coleman did not have such hearing and vision problems prior to being hit by defendant. The State rested its case, and defendant then testified in his own defense.

¶ 9    Defendant's testimony, in relevant part, was largely consistent with that of Coleman. The only notable exceptions were that defendant testified that Coleman did not return to his apartment for hours after defendant gave him money to buy more cocaine. Defendant left the apartment to try and locate Coleman but was unsuccessful. He then returned to the lobby of Coleman's building and waited for Coleman to return.

¶ 10    Defendant eventually observed Coleman return with a man he knew as Samual Jackson. Defendant testified that he unsuccessfully pleaded with Coleman to return his money, before engaging in a physical altercation with Coleman. Defendant did not intend to commit aggravated battery, maintaining that he was the victim of a robbery when Coleman accepted his money to purchase cocaine and then refused to return it. Defendant also acknowledged that the video played for the jury accurately depicted what occurred in the lobby of Coleman's building.

¶ 11    After closing arguments and deliberations, the jury returned a verdict of guilty on the sole charge of aggravated battery. Defendant's motion for a new trial was denied. At sentencing, the State noted that defendant was required to be sentenced as a Class X offender due to having two prior felony convictions for armed robbery. The trial court ultimately sentenced defendant to eight

years' imprisonment, and thereafter denied defendant's motion to reconsider. Defendant timely appealed.

¶ 12    On appeal, defendant first contends that the State failed to prove beyond a reasonable doubt that he caused Coleman "great bodily harm." We disagree.

¶ 13    The standard of review on a challenge to the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). The trier of fact is responsible for assessing the credibility of the witnesses, weighing the testimony, and drawing reasonable inferences from the evidence. *People v. Hutchinson*, 2013 IL App (1st) 102332 ¶ 27; *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). When considering the sufficiency of the evidence, it is not the reviewing court's duty to retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Therefore, a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Bradford*, 2016 IL 118674, ¶ 12. A reviewing court will only reverse a criminal conviction when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8; *Collins*, 214 Ill. 2d at 217.

¶ 14    "A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2020). As relevant here, a person commits aggravated battery "when, in committing a battery, other than by the discharge of a firearm, he or she knowingly *** [c]auses great bodily harm or permanent disability or disfigurement to an

individual 60 years of age or older." 720 ILCS 5/12-3.05(a)(4) (West 2020). Again, on appeal defendant challenges only the sufficiency of the evidence of "great bodily harm" presented at trial.

¶ 15    Defendant first contends that the evidence of great bodily harm was insufficient because Coleman only testified that doctors at the hospital had a *suspicion* that he had blood on the brain due to being struck by defendant, and the State presented no evidence that he actually did suffer such an injury. Defendant further contends that the evidence of a large bruise on Coleman's head was also insufficient to establish great bodily harm.

¶ 16    We need not further consider these arguments, as we conclude that the evidence of Coleman's long-term vision and hearing loss was sufficient on its own to affirm his conviction. As this court has recognized:

> "Infliction of great bodily harm is an essential element of the offense of aggravated battery. It has been held repeatedly that the term is not susceptible of a precise legal definition; it requires, however, an injury of a greater and more serious character than an ordinary battery. The question of whether the victim's injuries rise to the level of great bodily harm is a question for the trier of fact, which is neither dependent upon hospitalization of the victim, nor the permanency of his disability or disfigurement. Instead, the determination centers upon the injuries which the victim did, in fact, receive." *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991).

¶ 17    Here, Coleman testified that after being hit by defendant, he suffered from long-term vision and hearing loss. In fact, the record reflects that Coleman could not identify defendant in court from the witness stand but had to get up and stand closer to do so. Again, the term great bodily harm is not susceptible of a precise legal definition, whether Coleman suffered such harm was a question of fact for the jury, and on appeal it is not our duty to retry the defendant or substitute our

judgment for that of the jury on questions involving the weight of the evidence. On this record, we do not find that the evidence of long-term vision and hearing loss constituting great bodily harm is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *Beauchamp*, 241 Ill. 2d at 8.

¶ 18 Indeed, on appeal defendant does not specifically argue otherwise with respect to this evidence. Rather, defendant specifically argues that there was no evidence that Coleman's vision and hearing loss was caused by defendant's actions in striking Coleman in the head, where the State relied solely on Coleman's own testimony and failed to present any expert opinion or medical diagnosis on this issue. As an initial matter, we note that the State did present more than Coleman's testimony as to this issue. The video played for the jury itself was evidence of the violent nature of the incident, with defendant—a much larger man—delivering a violent blow to Coleman's head. The jury was permitted to draw the reasonable inference from this evidence that this violent attack caused the Coleman's injury.

¶ 19 Moreover, "[g]enerally, it is not necessary to present expert testimony on the issue of causation when the relationship between cause and effect is readily apparent based on common knowledge and experience." *People v. Steele*, 2014 IL App (1st) 121452, ¶ 31. It is therefore appropriate to present lay witness testimony from a victim as to "any symptoms or physical limitations which she did not experience prior to the incident." *Robinson v. Wieboldt Stores, Inc.*, 104 Ill. App. 3d 1021, 1026 (1982). And finally, again it was for the jury to draw reasonable inferences from this evidence and it is not our place to reject any such reasonable inferences on appeal. *Hutchinson*, 2013 IL App (1st) 102332 ¶ 27. In the light most favorable to the State, the State's evidence of causation as to Coleman's vision and hearing loss was sufficient to affirm his conviction.

¶ 20    As to the sufficiency of the evidence of great bodily harm, defendant finally contends that the State's evidence was insufficient because defendant's testimony was uncorroborated by any other evidence and was inherently unreliable due to Coleman's admitted use of cocaine. We disagree.

¶ 21    First, it is well recognized that the absence of corroborating medical testimony does not preclude the jury from finding great bodily harm. *People v. Cisneros*, 2013 IL App (3d) 110851, ¶ 21. Second, "even if it is shown that the complainant was in fact using drugs at the time of the incident, this consideration alone does not necessarily destroy his credibility." *People v. Cepolski*, 79 Ill. App. 3d 230, 238 (1979). Here, while there was evidence that Coleman had used cocaine before and on the day of the incident, there was no evidence that he ever used cocaine thereafter. The jury was therefore provided with no drug-related reason to question Coleman's testimony regarding the long-term vision and hearing loss he suffered. Even if there was such evidence, defendant's argument in this regard essentially asks us to improperly substitute our judgment for that of the jury on questions involving the weight of the evidence and the credibility of Coleman, which we decline to do. *Bradford*, 2016 IL 118674, ¶ 12.

¶ 22    Next, we address defendant's assertion that he was denied a fair trial when, during its closing argument, the State argued that Coleman suffered great bodily harm because he "was in the hospital for three days because he had bleeding in his brain." Defendant contends that this statement was not supported by the evidence or a reasonable inference from the evidence, and that he was therefore prejudiced by this argument. Acknowledging that he failed to preserve this issue with an objection at trial and by raising it in his posttrial motion, defendant asks this court to review it for plan error. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion).

¶ 23 The plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron*, 215 Ill. 2d 167, 186 (2005). The plain-error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In either circumstance, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 182. Here, defendant only asserts plain error under the first prong of the plain-error doctrine. We begin a plain-error analysis by determining if there was reversible error in the first instance, as "[a]bsent reversible error, there can be no plain error." *People v. Cosby*, 231 Ill. 2d 262, 273 (2008).

¶ 24 A defendant "faces a substantial burden in attempting to achieve reversal of his conviction based upon improper remarks made during closing argument." *People v. Moore*, 358 Ill.App.3d 683, 693 (2005). As this court has recognized:

"A prosecutor is allowed wide latitude during closing arguments. [Citation.] A prosecutor may comment on the evidence presented at trial, as well as any fair, reasonable inferences therefrom, even if such inferences reflect negatively on the defendant. [Citation.] Remarks made during closing arguments must be examined in the context of those made by both the defense and the prosecution." *People v. Willis*, 409 Ill. App. 3d 804, 813 (2011).

Prosecutorial comments constitute reversible error only if they engender "substantial prejudice." *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). Substantial prejudice occurs when "the improper remarks constituted a material factor in a defendant's conviction." *Id*.

¶ 25    This court has acknowledged confusion regarding the applicable standard of review, in light of "an apparent conflict" in supreme court precedent. *People v. Green*, 2017 IL App (1st) 152513, ¶¶ 78-9. In 2000, our supreme court stated that the trial court's determination of the propriety of remarks during closing argument "will not be disturbed absent a clear abuse of discretion." *People v. Blue*, 189 Ill. 2d 99, 128 (2000). However, in 2007, our supreme court subsequently stated that "[w]hether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Wheeler*, 226 Ill. 2d at 121.

¶ 26    We need not decide whether *Wheeler* or *Blue* defined the precise standard of review. This is because under either standard, we find that the remarks challenged in this appeal did not constitute reversible error. See *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 40 ("In this case, we would reach the same result under any standard of review.").

¶ 27    Here, even if the State misstated the evidence with respect to whether Coleman suffered bleeding in his brain, we conclude that defendant has failed to establish reversible error because the improper statement did constitute a material factor in defendant's conviction. First, we note that a "significant factor in reviewing the impact of a prosecutor's allegedly improper comments on a jury verdict is whether the comments were isolated and brief within the context of a lengthy closing argument." *People v. Woods*, 2011 IL App (1st) 091959, ¶ 42. Here, defendant cites a single, brief statement in the State's closing argument.

¶ 28    In addition, here the trial court repeatedly instructed the jury that neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded. Such an instruction cured any error that may have occurred regarding the prosecutor's comments. *People v. Simms*, 192 Ill. 2d 348, 396 (2000).

¶ 29    We also note that in closing arguments the State repeatedly highlighted the evidence that Coelman suffered vision and hearing loss. As we discussed above, such evidence alone was sufficient to affirm defendant's conviction, further indicating that any misstatement as to any other evidence of great bodily harm did not constitute a material factor in defendant's conviction.

¶ 30    In sum, we cannot say that the brief prosecutorial remark defendant challenges on appeal constituted a material factor in defendant's convictions, and therefore reversal is not warranted. See *Wheeler*, 226 Ill. 2d at 123.

¶ 31    Lastly, we address defendant's contention that the trial court improperly admitted the video into evidence. Defendant complains that Coleman was the only witness to provide testimony potentially laying a foundation for the admission of that evidence, and Coleman specifically testified that he could not remember all the events depicted in the video after he lost consciousness. Defendant once again acknowledges that this issue was not preserved by an objection at trial and by inclusion in his posttrial motion, and therefore once again asks this court to review the matter for first-prong plain error. We reject defendant's request for plain-error review of this issue for two simple reasons.

¶ 32    First, we agree with the State that recognizing defendant's forfeiture of this issue "is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection

deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *People v. Woods*, 214 Ill. 2d 455, 470 (2005). Had defendant raised this issue in any way below, neither the State nor the trial court would have been deprived of the opportunity to correct any possible deficiency in the foundational proof for the video.

¶ 33 Second, the only possible prejudice defendant identifies as resulting from the admission of the video into evidence is that it represented the "only direct evidence that proves a battery was committed." Not so. Defendant himself testified that "we got into a physical altercation. I'm not fitting to lay up here—how would I say this? And try to justify my actions. But my ulterior motives weren't aggravated battery." The issue of whether defendant committed a simple battery was thus admitted by defendant and was not contested at trial; rather, the contested issue was whether defendant committed *aggravated* battery. "A defendant forfeits any issue as to the impropriety of the evidence if he procures, invites, or acquiesces in the admission of that evidence." *People v. Woods*, 214 Ill. 2d 455, 475 (2005). Defendant cannot be heard to complain of prejudice in the admission of evidence of simple battery when he himself provided such evidence at trial.

¶ 34 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 35 Affirmed.