THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL LEE FROST, Defendant-Appellant.

Fourth District   No. 12887

Opinion filed April 25, 1977.

Ronald Tulin, of Charleston, for appellant.

Paul C. Komada, State's Attorney, of Charleston (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Michael Lee Frost, was convicted of involuntary manslaughter in the Circuit Court of Coles County. The defendant was sentenced to probation for a period of 3 years, with the first 6 months to be served in the Coles County jail. The victim of this alleged offense was the defendant's 2½ year old stepson, Toby Bradley.

Compilation of a succinct statement of fact in this case has proved to be a formidable task because there is no direct evidence linking the defendant to the crime and only scant circumstantial evidence consistent with the State's theory that the defendant physically abused the deceased.

The defendant married Melody Frost on January 20, 1973, two months before the death of Toby Bradley. Prior to the marriage, Mrs. Frost observed bruise-like marks on the deceased's face and hip. A neighbor's photograph of the deceased, taken at Christmas, 1972, discloses the presence of facial bruises. Dr. O. N. Sharma treated the child for pneumonia on January 2 and 4, 1973, and he testified that he did not see evidence of bruising at that time. On January 25, 1973, Dr. Sharma and his associate, Dr. Stanley Thiel, observed bruises on the child, after which Dr. Sharma informed Mrs. Frost that someone may have "manhandled" the child. Dr. Sharma testified that he did not file a child abuse report because he desired to confirm his theory as to the cause of the bruising. Dr. Sharma then ordered an x-ray of the deceased and requested that the deceased be brought back for a follow-up visit the next week. The

deceased and his mother, however, did not return and a child abuse report was never filed.

Instead, the deceased was taken to the Carle Clinic in Champaign where he was examined by Dr. Leo Perucca on February 10 and 12, 1973. Dr. Perucca ordered blood tests which did not disclose a deficiency affecting the blood's clotting mechanism, a potential cause for the bruising. Dr. Perucca diagnosed the child's ailment as allergic purpura, a predominantly childhood condition manifested by discoloration of the skin, swelling of the lips or head and welts on the skin. Dr. Perucca hospitalized the deceased on February 16, 1973, for observation of possible internal bleeding associated with purpura. Dr. Perucca also ordered x-rays of the deceased's skeletal structure which disclosed neither broken bones nor evidence of bleeding or calcification along the bones which might have been caused by child abuse.

The trial testimony also disclosed that the deceased infant was prone to accidents including a fall from a riding toy situated on a couch at the home of his parents on February 21, 1973, and a fall across an automobile console on March 9, 1973, when the driver suddenly braked in traffic. On March 11, 1973, Mrs. Frost removed a too-tight seat-belt from around the deceased's waist, at which time he cried out in apparently extreme pain.

Although originally indicted for the same offense as her husband, Mrs. Frost was granted immunity from prosecution in exchange for her testimony. That testimony, however, was entirely favorable to the defendant because she stated that the defendant never abused the child, and that the deceased and defendant often engaged in mutual demonstrations of affection.

Mrs. Frost testified that she returned home from work on March 13, 1973, at approximately 12:15 a.m. The Frosts, together, checked on their sleeping son who was found to have vomited. Mrs. Frost changed the deceased's bedclothes and he thereafter crawled onto the defendant's lap where he remained until 5 a.m. when he fell asleep. The defendant called his employer at 6 a.m., reporting that he was ill and unable to work that day.

The deceased rested throughout the day in bed and on his parent's couch. At approximately 3:30 p.m., the Frosts' pastor stopped by for a short visit at which time he viewed the deceased in bed and commented on his labored breathing. At approximately 3:45 p.m., the defendant rushed downstairs requesting that a neighbor, Orpha Thompson, assist him with the deceased. Mrs. Thompson observed that the deceased was not breathing and that his heart was not beating. An ambulance was called and the child was rushed to a hospital where he was pronounced dead.

Dr. Byron Ruskin performed an autopsy on the body of Toby Bradley

on March 14, 1973. Dr. Ruskin ordered x-rays of the body and discovered a spiral or twisting fracture of the left upper arm. The body appeared to be extensively bruised and Dr. Ruskin discovered that approximately one-third of the child's blood supply had drained into the abdominal cavity. In Dr. Ruskin's opinion, the deceased bled to death after suffering tears in two mesentery membranes which enclose numerous vessels supplying blood to the vital organs. After indicating that it was extremely difficult to determine the time the fatal injuries were sustained, he gave his opinion that one tear occurred within 24 hours of death, the other within 1 or 2 hours. He also stated that it would take a severe force to tear either of the mesenterys. Dr. Ruskin also testified that he had reviewed an old x-ray report containing a reference to an unexplained healed fracture of the deceased's collarbone, an injury which apparently preceded the Frosts' marriage.

On appeal, the defendant has alleged a number of potential errors as grounds for reversal of his conviction. This court need not address all of those issues because we find a single issue dispositive of the appeal. Specifically, the defendant alleges that the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of the offense of involuntary manslaughter. We agree.

A careful review of the record on appeal has revealed that there was no direct evidence presented to the jury indicating that the defendant committed any cruel or harmful act directed toward the deceased. The jury undoubtedly concluded that the defendant's mere presence with the deceased for nearly 24 hours prior to death was sufficient evidence of his guilt. The mere fact of his presence with the child throughout that period, however, does not constitute an affirmative showing of his guilt, especially since the defendant denied committing the crime. In addition to the defendant, during the 24-hour period preceding the child's death a number of persons including Mrs. Frost, one of her friends, the Frosts' pastor and their downstairs neighbor had been present with the child. The testimony of these persons fails to support the State's theory of child abuse.

■■ The defendant's conviction is entirely based on circumstantial evidence. The rule concerning review of such convictions is expressed in *People v. Harris* (1975), 34 Ill. App. 3d 906, 340 N.E.2d 327, wherein we stated:

> "The rule is that to support a conviction based on circumstantial evidence, the facts produced must not only be consistent with defendant's guilt, but they must also be inconsistent with any reasonable hypothesis of innocence. Such proof need not be beyond the possibility of a doubt (*People v. Branion*, 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied*, 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct.

2213), and may be inferred from the circumstances proved. (*People v. Huff*, 29 Ill. 2d 315, 194 N.E.2d 230.) This rule does not contemplate that the trier of fact is required to search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt, but a jury's verdict will be reversed on grounds of insufficient evidence where there is a reasonable and well founded doubt of guilt and the verdict is found to be palpably contrary to the weight of the evidence. *People v. Zuniga*, 53 Ill. 2d 550, 293 N.E.2d 595." 34 Ill. App. 3d 906, 908, 340 N.E.2d 327, 329.

■■ We find that there is a reasonable and well founded doubt as to the accused's guilt in the instant case. All of the evidence adduced at trial reflects that the defendant and deceased had a mutually affectionate relationship. There is some evidence that the deceased suffered traumatic injuries prior to and after the Frosts' marriage, but we cannot say who, if anyone, caused those injuries. The jury could have agreed with Dr. Perucca who felt the infant's bruising was caused by allergic purpura, or it could just as easily have agreed with Dr. Ruskin who felt the infant died as a result of traumatic injuries sustained within 24 hours of the time of death. The doubts and suspicions in this case cannot be overlooked and, together, they constitute a reasonable doubt that requires the reversal of the defendant's conviction.

Reversed.

CRAVEN, P. J., and GREEN, J., concur.