THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD EUGENE JOHNSON, Defendant-Appellant.

Fourth District   No. 14580

Opinion filed March 17, 1978.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The defendant, Ronald Eugene Johnson, was sentenced to concurrent terms of 2 to 6 years' imprisonment after a Coles County jury found him guilty of aggravated battery and robbery, violations of sections 12—4 and 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4, 18—1). The jury also found the defendant not guilty of an attempt murder charge, a violation of section 8—4 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 8—4).

On December 18, 1975, at approximately 5:25 p.m., a tall man wearing

a dark, military style coat and a red, knit ski mask or stocking cap robbed the Cosmic Moon International Boutique in Charleston of jewelry valued at approximately $4,300 and an estimated $198 in cash. During the robbery, the operator of the boutique, Bessie Fredericks, testified that the robber ordered her to lie on the floor and not look at him. Mrs. Fredericks, however, was able to steal a glance at the robber as he raised the mask, exposing approximately two/thirds of his face. Mrs. Fredericks recognized the robber as the defendant, a prior customer of the boutique. After the robber left, he fled in a light brown, four-door 1964 Chrysler at a high rate of speed. As he fled, the robber drove past two police officers and approached a uniformed officer named Rick Fisher who attempted to flag him down. Instead of halting, the robber swerved his car into Fisher, pinning the officer's right leg against another vehicle. Before being so injured, Fisher pitched his nightstick into the car's windshield, shattering it and spraying shards of glass into the front seat.

At approximately 5:39 p.m. on the day of the robbery, the police received a phone call reporting the defendant's 1964, light brown, four-door Chrysler stolen from a Polk Street apartment complex which was approximately four minutes from the scene of the crime. Upon investigation, an officer discovered the vehicle sitting east of a building located at 615 Polk Street. When discovered, the vehicle's windshield was shattered, but all of its doors were closed. The right front fender was damaged; a tray of jewelry and a red stocking cap were found in the interior of the vehicle. The defendant was arrested as he stood outside the apartment building. He claimed that his car had been stolen a short time earlier.

At trial, Myla Smith, a resident of the apartment complex testified that the defendant burst into her apartment as she prepared dinner on the day of the robbery. Because the defendant was a prior acquaintance, Ms. Smith permitted him to use her phone. James Bald, an Illinois Bureau of Identification criminalist, testified that red fibers removed from the collar of the sweatshirt defendant was wearing at the time of his arrest were similar in color and microscopic characteristics to the fibers in the red stocking cap used by the robber and found in defendant's automobile. Bald also testified that shards of glass removed from defendant's jeans and shoes were similar to the shards found on the front seat of the automobile. Bald's opinion was based on his comparison of the refractive index of the glass particles with a widely known measurement of the amount of light which is able to pass through pieces of glass. The amount varies depending on the chemical makeup of the glass.

On appeal, the defendant contends: (1) that the court erred in denying a motion to suppress any testimony concerning Mrs. Fredericks' identification of the defendant because it was allegedly tainted by a

suggestive pretrial photographic identification procedure; (2) that the manifest weight of the evidence fails to reflect defendant's guilt beyond a reasonable doubt; and (3) that the court abused its discretion by failing to impose a sentence of probation or a minimum term of incarceration.

Recently, the United States Supreme Court decided whether a State trooper's photographic identification of a heroin seller and his subsequent in-court identification of that seller were reliable. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) In holding that the identifications were reliable in spite of the fact that the State trooper had been given a single photograph of the defendant and asked if it showed the man who sold him heroin, the court applied a balancing test involving the "totality of the circumstances" similar to that applied in *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375. The court, therefore, determined the reliability of the identification by balancing six factors: (1) the corrupting effect of a suggestive police identification procedure; (2) the witness' opportunity to view the suspect at the time of the crime; (3) the witness' degree of attention; (4) the accuracy of the witness' description; (5) the witness' degree of certainty; and (6) the time elapsed between the crime and identification. (432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253; accord, *People v. McKinley* (1977), 69 Ill. 2d 145, 151, 370 N.E.2d 1040, 1042-43.) *People v. Allender* (1977), 69 Ill. 2d 38, 41, 370 N.E.2d 509, 510, is clearly distinguishable because the record here, unlike the record in *Allender*, contains testimony of an out-of-court photographic identification.

That identification occurred on December 18, 1975, when the police presented an array of eight mug shots to Mrs. Fredericks, the boutique operator, who had previously told the police that she believed one of her customers was the robber. She also gave defendant's name as that of the robber. At the police station, Mrs. Fredericks viewed the array and selected a mug shot of the defendant as he posed without glasses. She inexplicably stated that the person depicted in the mug shot was unknown to her except for his perpetration of the robbery. She also identified a single mug shot of the defendant posing with glasses.

■■ We find nothing unduly suggestive in the identification procedure used by the police in this case. As was stated by the Supreme Court in *Neil* and favorably quoted in *Manson,* the "admission of evidence of a showup without more does not violate due process." 409 U.S. 188, 198, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; 432 U.S. 98, 106, 53 L. Ed. 2d 140, 148, 97 S. Ct. 2243, 2249.

■■ In the instant case, Mrs. Fredericks was subjected to a carefully conducted photographic identification procedure. She first identified the suspected robber by name and then she selected defendant's mug shot from an eight-shot array. After that, she again positively identified a single

photograph of the defendant posing with glasses. The fact that she said she then could not name the person depicted in the photographs does not lessen the probative value of her identification because, initially, she was only able to furnish the robber's name after referring to her account books. The only suggestion offered by the police occurred when Mrs. Fredericks was shown the single mug shot. That suggestion, however, had only a minimally corrupting effect because she had already furnished the robber's name and had selected his mug shot from the array. Here also, Mrs. Fredericks testified concerning her extreme curiosity during the robbery; she thought to herself, "I've just got [sic] to know who this is. He said he'd kill me, but I'm going to see who it [sic] is." As she lay on the floor, she lifted her head and observed two/thirds of the robber's face as he lifted his mask. This testimony by Mrs. Fredericks reflects that she had ample opportunity to view the robber plus a surprising attentiveness at the time the crime was committed. In addition, the description she gave to the police was accurate and did indeed match the defendant's description. The fact that the identifications were made on the day of the robbery also tends to support their reliability. In fact, the only weakness in the identifications concerns Mrs. Fredericks' statements after viewing the mug shots. Although she was certain as to the correctness of her identifications, she inexplicably noted that she could not give his name even though she had previously done precisely that. The name she gave, however, was secured by reference to her account books and, since she could not refer to those books at the police station, we find nothing suspicious or suggestive in her otherwise reliable identifications.

■■ The second issue raised by the defense is in our opinion wholly frivolous because the manifest weight of the evidence clearly reflects defendant's guilt beyond a reasonable doubt. An eyewitness identified him as the robber; when found, his car not only contained the stolen property but also had a damaged windshield and right front fender; defendant was arrested near the car shortly after the robbery was committed; glass shards and red fibers similar to the windshield and robber's mask were discovered on defendant's clothing; and the defendant's description matched that of the robber. The manifest weight of the evidence, therefore, clearly supports defendant's conviction. *People v. Harris* (1975), 34 Ill. App. 3d 906, 908, 340 N.E.2d 327, 329; *People v. Frost* (1977), 47 Ill. App. 3d 767, 771, 362 N.E.2d 417, 419.

Defendant's third issue is also frivolous since the record clearly fails to reflect an abuse of sentencing discretion by the court. As we have done on numerous occasions, we again hold that we decline to tinker with a sentence imposed by the trial court unless there is an abuse of discretion. *People v. Honn* (1977), 47 Ill. App. 3d 378, 383, 362 N.E.2d 90, 94; *People v. Hines* (1976), 44 Ill. App. 3d 204, 206, 357 N.E.2d 884, 885.

■■ Defendant, while escaping from the scene of the robbery, swerved his automobile into a uniformed police officer who was attempting to arrest him. Although the officer was pinned between the escaping vehicle and another, the defendant did not stop. Still, however, defendant was only sentenced to concurrent terms of 2 to 6 years' imprisonment. We find this sentence to be not excessive.

For the foregoing reasons, we affirm defendant's convictions and the sentences imposed thereon by the trial court.

Affirmed.

MILLS and TRAPP, JJ., concur.