THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES MELVIN DORTCH, Defendant-Appellant.

Fourth District   No. 14875

Opinion filed October 24, 1978.—Rehearing denied November 22, 1978.

Garry E. Davis, of Armstrong, Erickson & Davis, Ltd., of Decatur, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Thomas W. Gendry, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:
Felony theft.
Bench trial.
Guilty.
1-3 years.
We affirm.
Dortch was found guilty of theft (over $150) and sentenced to prison for 1 to 3 years. The uncontroverted facts at defendant's bench trial revealed the following: Due to a trucker's strike in the Macon County area, R & W Liquor Store (R & W) made arrangements for defendant to transport beer from two local warehouses to the liquor store. Dortch proceeded to the warehouses and loaded the beer onto his truck but did not return to R & W. Instead, he drove to his home in Jennings, Missouri, and stored the stolen merchandise (20 barrels and 20 cases!) in the basement of his home.

On appeal, Dortch does not question his guilt or raise issues involving his conduct. Rather, he only attacks the conduct of St. Louis County police officers, Macon County police officers, and the trial judge.

I

First, Dortch contends that the St. Louis County (Missouri) police officers' warrantless search of his home was illegal and consequently any evidence found as a result of that search must be suppressed. We do not agree.

At the motion to suppress, St. Louis County police detectives testified that they had gone to the Dortch residence upon the basis of information they had received from a teletype dispatch sent by Macon County authorities. The dispatch related that Dortch had been involved in the theft of a large amount of barreled and canned beer.

Upon arrival at defendant's home, the detectives knocked on the door, but received no answer. Neighbors, however, informed the officers that Dortch and a female companion had entered the residence about 15 minutes prior to the officers' arrival. This information prompted the detectives to contact the Jennings Police Department which dispatched two police officers to assist the St. Louis County officers.

The police officers resumed knocking on the door and when no response ensued, they forced the door open and entered the Dortch residence. No question is raised concerning the police officers' initial entry into the home. All four officers testified that defendant came down the stairs and said, "Don't shoot, the beer's in the basement." The St. Louis County detectives then escorted Dortch into the living room while the two Jennings police officers proceeded upstairs and brought Dortch's two companions into the living room. The two county detectives both testified that Dortch and his two companions were read their *Miranda* rights and then defendant was asked if it was okay for the officers to go to the basement and see the beer. The detectives stated that defendant said "yes" or "go ahead."

Dortch and his two companions disputed the St. Louis County detectives' story and denied: (1) that Dortch had told police officers that the beer was in the basement; (2) that *Miranda* rights had been read; and (3) that defendant had ever told police officers that they could search the basement. The two Jennings officers corroborated the county officers' story concerning defendant's statement that the beer was in the basement. The Jennings officers neither corroborated nor disputed the county officers' testimony concerning the *Miranda* rights or defendant's consent to the search. The trial court heard all the testimony and obviously believed the St. Louis County police officers' version of the incident.

■■ The question of whether consent has been given is a factual matter to be initially determined by the trial court, and where the evidence on the issue is in conflict this court will accept the finding below unless it is clearly unreasonable. (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1; *People v. Haskell* (1968), 41 Ill. 2d 25, 241 N.E.2d 430.) Here, the trial court's finding is not clearly unreasonable. We do not agree with defendant's assertion that there is complete disagreement between the four arresting officers. The record does not reveal *any* disagreement since the Jennings officers did not testify that *Miranda* rights were not given the defendant or that defendant did not give a verbal consent to a search. Instead, the Jennings officers testified that they did not hear the St. Louis police detectives read defendant his *Miranda* rights and that they did not hear defendant give a verbal consent. Thus, we are presented with a factual situation where defendant and his companions have denied everything and are contradicted by police officers. When the evidence is in conflict, the appellate court should accept the finding of the court below unless it is clearly unreasonable. (*People v. Peterson* (1959), 17 Ill. 2d 513, 162 N.E.2d 380.) It follows that since the trial court accepted the police officers' testimony as true, we should likewise accept that testimony as true "because it cannot be said that it is clearly unreasonable." (*Haskell*, 41 Ill. 2d 25, 30, 241 N.E.2d 430, 433.) With this axiom in

mind, we accept the trial court's finding that *Miranda* rights were read to the defendant and that defendant gave police officers permission to search the premises.

Proceeding on the assumption that Dortch did give his verbal consent to search his residence, there is still the question of whether the consent was a result of a free and unconstrained choice. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) This presents a factual question that can only be determined after an assessment of the totality of the circumstances. *Bustamonte*; see also *People v. Cole* (1977), 53 Ill. App. 3d 711, 368 N.E.2d 1308.

The defendant portrays the situation as follows: Four armed policemen breaking down the door, rushing up the stairs, putting a gun to defendant's head, marching him down the stairs by holding onto his hair, forcing him to lie prostrate on the floor, and then completely ransacking his home. The State presents a much milder version of the events leading up to the search and denies that police officers ever put a gun to Dortch's head or held onto his hair. Furthermore, as mentioned previously, the State argues that *Miranda* rights were read to defendant and that Dortch gave a verbal consent to search his home.

■■ Once again, we are confronted with the factual question where the evidence is in conflict. It is obvious that the trial court believed the State's version and we cannot say that the trial court's decision was clearly unreasonable. Therefore, if the State's version is accepted, it is clear that Dortch's consent was a result of a free, unconstrained choice. For example, the police officers did not threaten the defendant or engage in subtle coercion. Furthermore, defendant was informed of his *Miranda* rights, and there is no evidence that Dortch was mentally deficient or unable to comprehend the situation. (See *United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820.) Accordingly, we find that the police officers' search was conducted pursuant to the voluntary consent and any evidence found in that search was admissible at trial.

## II

Dortch's second argument on review concerns the actions of Macon County police officers and the effect of a pretrial identification procedure on a subsequent in-court identification. The sales clerk at R & W Liquor who hired Dortch to pick up the beer gave the police a description of defendant from a written description he had obtained from defendant's employer. Two days later a police officer showed the sales clerk a single photograph of defendant which included defendant's name, the fact that the St. Louis County Police Department owned the picture, and that defendant was involved in a narcotics charge. The sales clerk identified Dortch as the person that he had hired to transport the beer to the liquor

store. Later, at the motion to suppress and at the bench trial, the sales clerk identified defendant and testified that his identification was based on his memory of his encounter with defendant.

■■ The threshold inquiry that must be answered is whether the out-of-court identification was unnecessarily suggestive. (*Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.) We conclude that it was. A single photo show up has often been criticized as being improperly suggestive. (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152.) Here, not only was one photograph involved, but the identifying witness knew the defendant's name prior to viewing the picture and the picture contained biographical information such as the defendant's name plus the fact that he had been involved in a narcotics charge—obviously a police "mug shot." But as the trial court stated, at the time the photograph was shown the identifying witness, charges had already been filed and a warrant had been issued for Dortch's arrest. Consequently, the out-of-court photographic identification merely confirmed the prior identification of defendant.

The real gist of the issue, however, is whether this suggestive out-of-court photo so tainted the identifying witness' memory that his in-court identification was unreliable. Regardless of how the initial out-of-court identification came about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) Each case must be decided on its own facts and a conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons.*

The Supreme Court of the United States has recently employed a test in determining whether the out-of-court identification was so suggestive as to render the in-court identification unreliable. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) The test consists of a balancing of the following six factors: (1) the corrupting effect of a suggestive police identification procedure; (2) the witness' opportunity to view the suspect at the time of the crime; (3) the witness' degree of attention; (4) the accuracy of the witness' description; (5) the witness' degree of certainty; and (6) the time elapsed between the crime and identification. See also *People v. Johnson* (1978), 58 Ill. App. 3d 169, 373 N.E.2d 1086.

Here, the sales clerk's identification was made two days after he had viewed the suspect and the witness was absolutely certain that Dortch was the man that he had hired to pick up the beer. The witness was

emphatic concerning the fact that his in-court identification was based on the memory of his encounter with defendant and was not the result of his view of the suggestive photograph.

■■ Perhaps paramount among the criteria listed in *Brathwaite* is the witness' opportunity to view the suspect. (See *People v. Williams* (1972), 52 Ill. 2d 455, 288 N.E.2d 406; *People v. Ragan* (1975), 33 Ill. App. 3d 151, 337 N.E.2d 432.) It has been held that a witness' in-court identification has a sufficient independent basis—in spite of a suggestive photo identification prior to trial—where a witness observed the defendant for a period of three to five minutes in close proximity and with good illumination. (*People v. Bradford* (1971), 3 Ill. App. 3d 81, 279 N.E.2d 34.) Likewise, an observation time of seven to eight minutes was held to be sufficient. (*People v. Shelton* (1975), 33 Ill. App. 3d 871, 338 N.E.2d 585.) In the instant case, the identifying witness viewed the defendant for a period of five minutes, in close proximity, and in a well-lighted room. Therefore, the sales clerk's view of the defendant is clearly sufficient to form an independent basis for his in-court identification.

We observe that the identification procedure used by police was not exemplary police methodology. However, although the single photograph was suggestive, it was used merely to confirm the prior identification of defendant. More importantly, the testimony of the identification witness assures this court that his in-court identification was based on his personal encounter with Dortch and therefore had an adequate independent origin. In sum, no error.

### III

● 6 As a final contention, Dortch argues that he should have been granted probation rather than imprisonment. Specifically, he contends that the trial court improperly considered his decision to appeal as indicating a lack of penitence. On the contrary, a review of the record shows that the trial court did not base its decision to refuse probation on Dortch's decision to appeal and, in fact, expressly advised Dortch of his right to appeal. In outlining its reasons for refusing probation, the trial court did not list defendant's failure to appeal but, instead, examined defendant's employment history, criminal record, and defendant's prior probation. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a).) With these factors weighing against probation, the trial judge sentenced defendant to a minimum term of imprisonment.

The court's sentence has ample support and clearly was not an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Affirmed.

GREEN, P. J., and REARDON, J., concur.