THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JANIE M. TURNER, Defendant-Appellant.

Second District   No. 2—88—0501

Opinion filed January 18, 1990.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers

and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Janie Turner, was charged by indictment with the offense of murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)). The victim of the alleged offense was defendant's 2½-year-old niece, Tiffany Booker. Following a jury trial, defendant was found guilty of involuntary manslaughter and was sentenced to an extended term of 10 years' imprisonment. Defendant timely appeals, contending that (1) she was not proved guilty of involuntary manslaughter beyond a reasonable doubt; and (2) defense counsel rendered ineffective assistance. We affirm.

Keith Humphries, a fire fighter paramedic, testified that at approximately 3 p.m. on June 15, 1987, he received a call from a "very calm" female voice. The caller asked the paramedics to come over and check on a baby that was not breathing. Humphries and his partner, David Biggs, responded to the call within minutes. However, when they knocked on the door of the apartment, there was no answer "for quite an extended period of time." Finally, defendant answered the paramedics by telling them to come in. Upon entering the doorway, they were met by defendant holding a child, the deceased, in her arms. Defendant indicated that the child had fallen down some stairs and that when she found the child, the child was not breathing.

In administering aid to the child, Humphries noticed that the child had numerous facial and head bruises. Humphries testified that such bruises would be consistent with somebody who had spinal or head injuries. Humphries also noticed that the little girl's lips were "puffy" and her two front teeth were missing. Humphries estimated that the 2½-year-old child weighed 15 pounds. Humphries testified that he noticed a "lint-like fluff" around the baby's neck. When he asked defendant about it, she stated that the child had become entangled in her blanket while taking a nap. It was upon removing the blanket that defendant noticed the child was not breathing and called the paramedics.

The testimony of paramedic David Biggs, Humphries' partner, was substantially similar to that given by Humphries.

Police detective, Richard McKissick, testified that on the afternoon of June 15, 1987, he spoke with defendant at her apartment. Defendant told McKissick that she had been cooking in the kitchen while Tiffany and Doyne Burnett, another child for whom defendant

was baby-sitting, were playing in the common hallway outside the apartment. Defendant stated that she heard crying coming from the south end of the hallway and, upon checking, found Tiffany lying at the bottom of the stairs crying. The stairs to which defendant referred are nine carpeted stairs leading to the basement. The basement itself has a concrete floor.

Defendant told McKissick that she picked Tiffany up and brought her and Doyne back upstairs. Tiffany had stopped crying and started playing again. Defendant stated that approximately 15 minutes later, she put Tiffany to bed for a nap. Another 20 minutes passed at which time defendant looked in on Tiffany and found the blanket wrapped around the child's head. When defendant realized that Tiffany was not breathing she started pounding on the child's chest. However, she could not get Tiffany to breath so she called the paramedics.

When Detective McKissick later showed defendant pictures of bruises on Tiffany's right side of her forehead and around her neck area, defendant stated that she had never seen the bruises before. Defendant told McKissick that even though she was not Tiffany's natural mother, she was entirely responsible for her care. Defendant stated that she was the only one who washed and bathed the child.

Dr. Larry Blum testified that on June 16, 1987, he performed an autopsy on Tiffany. During the external examination, he found, in part, the following abnormalities: a contusion on her upper chest; a scar over her left shoulder; a scar on her chest; a scar on her lower abdomen; scars on the front of both lower legs; a suture incision on her right ankle; a scar on her right arm; two needle puncture wounds in the fold of the right elbow; bruises on her right arm; a needle puncture wound in the left arm; scars on her left wrist; scars on the back of her neck and on her back, several bruises on her back, scars over her left buttocks region; scars on the back of her left leg; a bruise on the back of her left arm; bruises on her forehead, her ears, and around her eyes; a bruise on her chin; her lower lip was torn and lacerated; a scar on her nose; bruises on the left side of her face; her two front teeth were missing; and her gums were torn where her front teeth had been. Dr. Blum testified that the bruises on Tiffany's buttocks were old; however, the facial and head injuries were "fresh."

Dr. Blum testified that during the internal examination of Tiffany he found, in part, the following: an abnormal amount of blood in her abdominal cavity; both her lungs were collapsed; there was bruising on the lower side of her left lung; there were three fractured ribs;

the liver and diaphragm were torn; the venae cava, a large vein that carries blood to the heart from the lower extremities, was also torn. Dr. Blum testified that the injuries listed above were "fresh." In addition, there was a fracture located in her lower arm which was estimated to be about two weeks old. Dr. Blum estimated Tiffany's weight at 17 pounds, 5 ounces, which is the "extreme lower end of normal" for her age.

In Blum's opinion, the pattern of injuries he found when examining Tiffany were not ordinary "toddler-type" and fell nowhere near an "accidental injury pattern." Blum stated that the cause of the liver injury was a very rapid, severe pressure over that exact area. The injuries to the ribs, venal cava, diaphragm and lungs were similarly caused. Blum opined that Tiffany's injuries were "definitely not consistent" with a fall down carpeted stairs. Blum stated that Tiffany's injuries would be consistent with a child of that age being punched, kicked, or struck with an object by an adult. It was not possible for the injuries to be caused by a single blow. Blum testified that the cause of death was hemmorhagic shock due to blunt trauma to the abdomen. Death would have occurred within one to two minutes of these injuries being sustained; thus, after receiving these injuries, the child could not have played for 15 minutes and then gone to bed.

Dr. Paula Kienberger Jaudes, a pediatrician specializing in child abuse and neglect, testified that in her opinion Tiffany was a victim of battered child syndrome. The cause of Tiffany's death was that she was badly beaten, and a single blow could not have caused all the injuries. Jaudes testified that not much force is needed when performing cardiopulmonary resuscitation (CPR) on a small child. Pounding on the child's chest might cause some anterior rib fractures, and pounding below the chest in the area of the liver and diaphragm could cause a laceration on the upper part of the liver. When asked whether CPR could have caused an avulsion of the liver as well as a laceration to the venae cava, Jaudes opined that it could not.

Defense witness Jimmie Lee Booker, defendant's mother and Tiffany Booker's grandmother, testified that in April 1987, two months prior to the incident herein, Tiffany was sent to live with defendant because Tiffany's natural mother, Terry Booker, was abusing the child. Defendant's mother stated that the relationship between Tiffany and defendant was "just like daughter and mother" and that she had never seen defendant strike Tiffany or hurt her in any way. Similar testimony was elicited from defendant's niece, Yashona Turner, defendant's sisters, Christine Turner and Vernita Booker, and

defendant's friend, Melvin Jackson.

Jesse Burnett, Jr., defendant's neighbor, testified that he brought his son, Doyne, to defendant's apartment before he left for work on June 15, 1987, at 2:30 p.m. Burnett caught a glimpse of Tiffany standing in the kitchen and did not notice anything unusual about her.

Lastly, defendant took the stand on her own behalf. Defendant testified that she had known Tiffany all of Tiffany's life. Defendant stated that the child was like her own daughter and denied that she had ever hurt her. Tiffany began living with defendant just after Easter in April 1987.

According to defendant, on June 15, 1987, Tiffany got out of bed late, around 1 or 1:30 p.m., because she was not feeling well and had not been feeling well for about 10 days. Doyne Burnett arrived around 2 or 2:30 p.m. that day. While defendant was preparing dinner in the kitchen, she left the kitchen door open to the outside hallway so the children could play in the hall. Defendant testified that she then heard a cry and went to check on the children. At the end of the hallway she found Doyne at the top of the stairs and Tiffany lying at the side of the steps on the concrete below. Tiffany was crying.

Defendant stated that she picked Tiffany up to comfort her and Tiffany told defendant that she fell. Defendant claimed that Tiffany stopped crying, so she brought Tiffany back to the apartment and sat her on the couch. Defendant testified that the child appeared tired, so she put her to bed. About 15 to 20 minutes later, defendant checked on Tiffany and found the blanket over the child's head. In removing the blanket, defendant noticed that Tiffany was not responding or breathing. Defendant testified that she pushed on the child's stomach five or six times to try to get her breathing. Upon determining that her efforts were unsuccessful, defendant called the paramedics. Defendant claimed that she then opened the front door so the paramedics could come directly in when they arrived. Defendant stated that she saw them coming and met them at the door with Tiffany in her arms. After the paramedics worked on Tiffany they took her to the hospital. Defendant and Doyne went to the police station.

On cross-examination, defendant testified that she did not notice Tiffany being extremely underweight. Defendant claimed that the child was always thin but had lost a couple pounds prior to this incident because she had been ill. Defendant did not know how Tiffany had lost her front teeth, nor had defendant ever seen any cuts or

bruises on Tiffany's head, neck or back prior to handing Tiffany to the paramedics. Defendant did not notice anything unusual about Tiffany's left lower arm, which Dr. Blum testified was fractured two weeks prior to Tiffany's death. According to defendant, based on where Tiffany landed, she did not roll down the nine stairs; it was a straight drop.

After the defense rested and closing arguments were given, the jury retired to deliberate. A verdict of guilty to the offense of involuntary manslaughter was rendered. The court sentenced defendant to an extended term of 10 years' imprisonment.

On appeal, defendant first contends that she was not proved guilty of involuntary manslaughter beyond a reasonable doubt. Defendant argues that no history of abuse was presented against her, nor had anyone ever seen her strike Tiffany. She steadfastly denies having ever harmed Tiffany and claims that her narration of the events that afternoon has never changed. Defendant maintains that there were inconsistencies raised by the expert witnesses and their testimony sheds no light on determining whether she committed involuntary manslaughter.

■■■ A reviewing court will only set aside a criminal conviction when the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) The relevant question in making such a determination is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Linscott* (1986), 114 Ill. 2d 340, 348; *People v. Collins*, 106 Ill. 2d at 261.) Our supreme court has recently held that the reasonable doubt standard applies in reviewing the sufficiency of the evidence in all criminal cases, whether the evidence is direct or circumstantial. *People v. Pintos* (1989), 133 Ill. 2d 286, 291.

■ In applying the standard to the case at bar, we find that a rational trier of fact could have found defendant guilty beyond a reasonable doubt. While defendant claims she never abused the child, and her witnesses similarly so testified, the jury could have reasonably found to the contrary. There were many "fresh" bruises and injuries found on the child that were irreconcilable with defendant's claim that the child had either fallen from or down the stairs. Dr. Blum testified that Tiffany's injuries were "definitely not consistent" with a fall down carpeted stairs. Even if we were to accept defendant's claim that Tiffany had fallen from the steps to the concrete floor below, thus possibly sustaining some of the resulting injuries,

Dr. Blum testified that death would have occurred within one to two minutes, which is inconsistent with defendant's claim that she had brought the child upstairs and set her on the couch for awhile before putting her to bed.

Dr. Jaudes testified that Tiffany was a victim of battered child syndrome, and Dr. Blum stated that the pattern of injuries found on Tiffany was nowhere near an "accidental injury pattern." Defendant attempted to explain this by presenting testimony indicating that Tiffany's natural mother had abused her and defendant had only taken custody of the child two months prior to her death. However, the jury could have reasonably found such a claim to be suspect given that defendant was admittedly the only person who washed and bathed the child, yet she had never seen any cuts or bruises on the child's head, neck or back, some of which were days, weeks, or even months old. Defendant did not notice the child being extremely underweight; she could not say how Tiffany had lost her front teeth; nor was she aware of the fact that Tiffany's arm had been fractured.

Further, while defendant claims that her narration of the events that afternoon has never changed, our reading of the record indicates to the contrary. Defendant initially told the paramedics that the child was not breathing after the fall; however, she later told them that she put the child to bed and upon checking on the child discovered that she was not breathing.

Additionally, we believe that any inconsistencies allegedly raised by the expert testimony are so insignificant that we need not even address them.

We disagree with defendant's assertion that the circumstances presented here are remarkably similar to the facts of *People v. Frost* (1977), 47 Ill. App. 3d 767. In *Frost*, the defendant was convicted of involuntary manslaughter. The victim of the alleged offense was the defendant's 2½-year-old stepson. On the day of the alleged offense, both the defendant and his wife were home with the child. At approximately 3:30 p.m., the couple's pastor stopped by for a short visit at which time he observed the child in bed and commented on his labored breathing. At approximately 3:45 p.m., the defendant rushed downstairs requesting that a neighbor assist him with the child, who was not breathing. An ambulance was called, and the child was rushed to a hospital where he was pronounced dead.

At the *Frost* trial, there was some evidence adduced that the child had suffered traumatic injuries prior to and after the couple's marriage, but there was no evidence indicating who, if anyone, caused those injuries. Further, there was conflicting expert testi-

mony. One expert testified that the child suffered from allergic purpura, a childhood condition which could explain the deceased's injuries. There was other testimony indicating that the child died as a result of traumatic injuries sustained within 24 hours of death.

The appellate court reversed the defendant's conviction finding a "reasonable and well founded doubt as to the accused's guilt." (*Frost*, 47 Ill. App. 3d at 771.) However, in reaching this conclusion, the court applied the "reasonable hypothesis of innocence" test which has now been expressly rejected by our supreme court. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) In addition, the court observed that the only evidence presented against the defendant was "scant circumstantial evidence" (*Frost*, 47 Ill. App. 3d at 768), and there was expert testimony supporting the defendant's denial of having harmed the child. In the case at bar, there was sufficient circumstantial and direct evidence presented against defendant: defendant's narration of the events was entirely implausible with the testimony presented by the experts; the paramedics testified that defendant was "very calm" and delayed in answering the door; and there was evidence of recent injuries indicating abuse, yet defendant, being the sole caretaker, was unaware of those injuries. Thus, the holding in *Frost* does not compel us to find that the evidence presented here is so unsatisfactory that no rational trier of fact could find the defendant guilty beyond a reasonable doubt.

■ Defendant's second contention is that she was denied the effective assistance of counsel because her defense attorney failed to tender the proper jury instruction regarding consideration of circumstantial evidence. In order to demonstrate ineffective assistance of counsel, a defendant must show that (1) his attorney's conduct was professionally deficient; and (2) but for the deficiency, there is a reasonable probability that the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064-65.) Our supreme court has adopted the *Strickland* standard when dealing with a claim of ineffective assistance of counsel. *People v. Albanese* (1984), 104 Ill. 2d 504, 526, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.

As it presently reads, Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981) provides:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [(the) (a)] defendant. Circumstantial evidence should be considered by you to-

. gether with all the other evidence in the case in arriving at your verdict."

The instruction formerly had a second paragraph that read: "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." However, our supreme court has determined that the second paragraph should no longer be given. *People v. Bryant* (1986), 113 Ill. 2d 497, 510-11; see also *People v. Pintos* (1989), 133 Ill. 2d 286, 291.

It appears from the record that defense counsel offered the entire instruction, including the second paragraph, but it was denied by the trial court. However, it does not appear that the first paragraph was ever offered alone. Defendant contends that counsel's failure to do so constituted prejudicial error. In support, defendant cites *People v. Pegram* (1988), 124 Ill. 2d 166, and *People v. Ogunsola* (1981), 87 Ill. 2d 216. We find both cases to be distinguishable from the case at bar. In the cited cases, counsel failed to instruct the jury as to an essential element of the offense itself, whereas, in the case at bar, it was not essential for the jury to determine whether evidence was circumstantial or direct in order to find defendant guilty of involuntary manslaughter.

■■ ■ We do not believe it is necessary to instruct the jury as to the definition of circumstantial evidence in every case in which such evidence is presented. We need not consider whether defense counsel erred in failing to instruct the jury in this case as we find defendant has failed to meet the second prong of the *Strickland* standard in proving ineffective assistance of counsel. Specifically, defendant has not shown that had the circumstantial evidence instruction been given there is a reasonable probability that the jury would have found her not guilty. We do not believe that such a claim is supported by the record.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

REINHARD and McLAREN, JJ., concur.