SECOND DIVISION

No. 1-05-2042

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 01 CR 6428 |
| | ) | |
| | ) | |
| | ) | |
| ANDRE RICHARDSON, | ) | Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Following a jury trial, defendant Andre Richardson was convicted of the first degree murder of his 11-month-old daughter and was sentenced to 40 years' imprisonment. In *People v. Richardson*, 376 Ill. App. 3d 537 (2007), we reversed defendant's conviction on the basis that the trial court erred in denying his motion to suppress where the State failed to prove by clear and convincing evidence that

defendant's eye injury was not inflicted in order to obtain a confession. The State was granted leave to appeal to the Illinois Supreme Court. *People v. Richardson*, 226 Ill. 2d 627 (2008). Before our supreme court, the State argued that defendant's inculpatory statement was voluntary and not coerced. The supreme court agreed and reversed this court's decision, instructing this court to consider defendant's remaining contentions. *People v. Richardson*, 234 Ill. 2d 233 (2009).

Defendant claims: (1) he received ineffective assistance of counsel; (2) the trial court erred in refusing to instruct the jury on the lesser-included offense of involuntary manslaughter; and (3) he was denied a fair trial when autopsy photographs were published to the jury and sent to the jury room during deliberations. After considering defendant's remaining claims, we affirm the judgment of the trial court.

## FACTS

Defendant was tried for the murder of his 11-month-old daughter Diamond. Diamond sustained over 61 injuries after being beaten, slapped and bitten by defendant. A thorough recitation of the facts can be found in *Richardson*, 234 Ill. 2d 233. We will discuss only those facts relevant to the disposition of defendant's remaining claims.

## ANALYSIS

Defendant argues he was denied his right to effective assistance of counsel where counsel failed to offer expert testimony concerning his mental impairment during the motion to suppress hearing. Defendant contends that if such evidence had been offered, it would have shown that defendant's *Miranda* waiver was invalid and that his

1-05-2042

confession was involuntary.

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

Under the first prong of the *Strickland* test, defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, defendant must overcome the presumption that under the circumstances, the challenged action, 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 100 L. Ed. 83, 94, 76 S. Ct. 158, 164 (1955).

With respect to establishing prejudice," ' "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test. * * * " [Citation.] Rather, a defendant is required to show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." ' " *People v. Negron,* 297 Ill. App. 3d 519, 537 (1998), quoting *People v. Collins,* 106 Ill. 2d 237, 274 (1985), quoting *Strickland,* 466 U.S. at 693, 695, 80 L. Ed. 2d at 697, 698, 104 S. Ct. at 2067, 2069.

3

Where the defendant fails to prove prejudice, the reviewing court need not determine whether counsel's performance constituted less than reasonable assistance. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Flores*, 153 Ill. 2d 264, 284 (1992). The defendant bears the burden of overcoming a strong presumption in favor of finding that counsel's advocacy was effective. *Albanese*, 104 Ill. 2d at 525.

In this case, defense counsel filed a motion to suppress defendant's statement on two grounds. First, his confession was involuntary due to physical and psychological coercion because he was beaten by the police. The second basis for suppression alleged that defendant was unable to knowingly and voluntarily waive his *Miranda* rights. Evidence was offered as to the first basis for suppression, but defense counsel offered no evidence to support the claim that defendant was unable to waive his *Miranda* rights, despite counsel's repeated statements to the court that defendant was being evaluated by an expert to determine his ability to waive such rights.

The record shows that counsel did request numerous continuances prior to the hearing on the motion to suppress to obtain such an evaluation. However, at the hearing, counsel made no mention of the evaluation. Defendant would like this court to assume that: (1) defendant received a favorable evaluation but defense counsel failed to use it; or (2) defense counsel did not obtain an evaluation.

Contrary to defendant's suggestion, we cannot make such assumptions. Whether an evaluation was in fact completed and what the results of that evaluation might be are matters outside the record in this case. We do recognize that defendant's

mental capacity was raised during sentencing. A presentence investigation report indicated that defendant's most recent test scores showed that he was at the third grade reading and math levels and that he was at a second grade spelling level. Furthermore, in the report finding defendant fit for sentencing, psychologist Neu reported that intellectual testing on defendant showed him to be in the "upper echelon of mild mental retardation." Nevertheless, neither of these evaluations specifically dealt with defendant's ability to waive his *Miranda* rights. Therefore, we cannot say that counsel was ineffective for failing to offer expert testimony regarding defendant's mental impairment during the suppression hearing. A determination as to whether trial counsel was ineffective as to this issue is a claim that would best be raised in a postconviction petition. Where information not of record is critical to a defendant's claim, it must be raised in a collateral proceeding. *People v. Durgan,* 346 Ill. App. 3d 1121, 1141-429 (2004); *People v. Burns,* 304 Ill. App. 3d 1, 11-12 (1999) (ineffective assistance of counsel claims based on matters *de hors* the record are not proper on direct appeal).

Defendant next contends that the trial court erred when it refused to instruct the jury on the lesser-included offense of involuntary manslaughter where the evidence showed that he hit his daughter because she was misbehaving and he had no intention of actually harming her.

Defendant testified at trial that he hit his daughter because he did not want her to eat off the floor and because she would not listen to him. At the jury instruction conference, defense counsel requested an involuntary manslaughter instruction, arguing that defendant inflicted the injuries on Diamond not knowing that he would do

5

great harm to her. The trial court denied the request, finding that there was no evidence to support such an instruction. After deliberations began, the jury sent a note posing two questions: (1) "Does the jury have the option of finding him guilty of a lesser charge?" and (2) "What would be the minimum punishment?" Defense counsel again requested that the court instruct the jury on the lesser offense of involuntary manslaughter. The court denied defense counsel's request. Defense counsel later moved for a mistrial based on the court's refusal to tender an involuntary manslaughter instruction. The trial court denied defendant's motion for a mistrial, stating that the 61 injuries Diamond sustained did not establish recklessness. The court also noted that not one scintilla of evidence existed to demonstrate that defendant did anything but beat Diamond again and again. The jury was instructed that it had the law that applied to the case and it was to continue deliberating.

Involuntary manslaughter requires a less culpable mental state than first degree murder. Under section 9-1(a)(2) of the Criminal Code of 1961, a defendant commits first degree murder when he kills an individual without lawful justification and he knows that his acts create a strong probability of death or great bodily harm. 720 ILCS 5/9-1(a)(2) (West 2004). A defendant commits involuntary manslaughter, however, when he performs acts that are likely to cause death or great bodily harm to another and he performs these acts recklessly. 720 ILCS 5/9-3(a) (West 2004). Recklessness is statutorily defined:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will

6

follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2004). Clearly, reckless conduct involves a lesser degree of risk than conduct that creates a strong probability of death or great bodily harm. See *People v. Davis,* 35 Ill. 2d 55, 60 (1966).

An instruction on a lesser offense is justified when there is some evidence to support the giving of the instruction. *People v. Jones,* 175 Ill. 2d 126, 132 (1997). Where there is credible evidence to support reducing the crime of first degree murder to involuntary manslaughter, an instruction should be given. *People v. Foster*, 119 Ill. 2d 69, 87 (1987). A circuit court's failure to give the instruction, where the evidence supports the instruction, is an abuse of discretion. *Jones*, 175 Ill. 2d at 132.

Defendant claims that the evidence presented at trial was sufficient to warrant instructions on involuntary manslaughter. According to defendant, there was sufficient evidence to establish that defendant acted recklessly because the evidence showed that defendant did not intend to kill Diamond and did not know that great bodily harm would result from his actions. In support, defendant cites *People v. Lefler*, 38 Ill. 2d 216, 218 (1967), *People v. Turner*, 193 Ill. App. 3d 152, 153-55 (1990), and *People v. Brown*, 83 Ill. App. 2d 411, 414-15 (1967).

In *Lefler*, the defendant's infant daughter died with a skull fracture, extensive brain injury and rib injuries. *Lefler*, 38 Ill. 2d at 218. The defendant admitted to shaking and squeezing his daughter to get her to stop crying and could have broken her ribs in

7

the process. Defendant was convicted of involuntary manslaughter. *Lefler*, 38 Ill. 2d at 222. In *Turner,* 193 Ill. App. 3d 152, the defendant was charged with the murder of her two-year-old niece. Following a jury trial, the defendant was convicted of involuntary manslaughter. The evidence at trial showed that the little girl had extensive injuries, including facial and head injuries, fractured ribs, a fractured arm, a torn liver and diaphragm, and numerous scars on her entire body. *Turner*, 193 Ill. App. 3d at 154-55. After the defendant appealed, this court found that the evidence was sufficient to convict defendant of involuntary manslaughter beyond a reasonable doubt. Finally, in *People v. Brown*, 83 Ill. App. 2d 411 (1967), the defendant was convicted of involuntary manslaughter after his girlfriend's three-year-old son died from multiple traumatic impacts, as evidenced by large bruises over the victim's body, in addition to other injuries. *Brown*, 83 Ill. App. 2d at 414-15. The *Brown* court found that there was sufficient circumstantial evidence to convict the defendant of involuntary manslaughter beyond a reasonable doubt. *Brown*, 83 Ill. App. 2d at 415.

We find defendant's reliance on *Lefler*, *Turner* and *Brown* to be misplaced. The cases cited by defendant are not cases involving the question of whether a jury instruction on involuntary manslaughter was improperly refused by the trial court. Rather, *Lefler*, *Turner* and *Brown* are mere instances of the cases in which the evidence supported a finding of involuntary manslaughter as a lesser offense of murder.

Although not dispositive, certain factors may suggest whether a defendant acted recklessly and whether an involuntary manslaughter instruction is appropriate. These factors include the disparity in size and strength between the defendant and the victim,

8

the brutality and duration of the beating and severity of the injuries, and whether the defendant used his bare fists or a weapon. *People v. Eason*, 326 Ill. App. 3d 197, 209 (2001). In addition, an involuntary manslaughter instruction is generally not warranted where the nature of the killing, shown by either multiple wounds or the victim's defenselessness, shows that defendant did not act recklessly. *People v. Trotter,* 178 Ill. App. 3d 292, 298 (1988). Whether an involuntary manslaughter instruction is warranted depends on the facts and circumstances of each case.

Defendant's testimony that he did not intend to kill Diamond is insufficient to warrant an involuntary manslaughter instruction in this case. By defendant's own account, he beat his 11-month-old daughter. Defendant hit Diamond's hand, and the front and back of her shoulder and bit her on the stomach when she tried to eat cereal off of the floor. After Diamond finished eating, he pushed on her stomach to see how far he could push it in. When she vomited, he "karate chopped" Diamond's ribs and hit her on the buttocks with a plastic hanger. Still not satisfied, defendant hit Diamond about eight times with a belt. When Diamond vomited again after he had washed her and changed her clothes, defendant "was real angry" and "smacked" her in the face. He then placed Diamond in a corner and told her to face the wall. Diamond would not stand still so defendant "spanked her on the pamper" about four times. Defendant then placed Diamond against the wall and ordered her not to move. Diamond "started getting sleepy" and fell back against the wall and hit her head. After Diamond fainted, defendant shook her "pretty hard" and she hit her head on the window casement and windowsill.

9

There is not a scintilla of evidence to support a finding that defendant acted recklessly rather than knowingly and intentionally. Diamond was a defenseless infant who suffered 61 injuries at the hands of defendant. After reviewing the record in this case, we find that the trial court did not abuse its discretion in failing to give an involuntary manslaughter instruction because the evidence did not warrant such an instruction. Consequently, defendant's claim fails.

Finally, defendant argues that he was denied a fair trial when 27 gruesome autopsy photographs were published to the jury via an overhead projector during the testimony of the medical examiner and then sent to the jury room during deliberations. A total of 53 photographs post-mortem photographs were shown to the jury. Twenty-six of these photographs depicted external views of Diamond's injuries. These photographs are not at issue here. Defendant's argument concerns the 27 autopsy photos that defendant claims merely show Diamond's internal organs while she was being autopsied.

Prior to trial, defense counsel objected to the State's use of any autopsy photographs that depicted Diamond's internal injuries. The court responded that the photographs were relevant to show intent because despite the repeated blows to Diamond's body, the external photographs did not show the cause of death. However, the court reserved ruling on defendant's motion until Dr. Cogan testified prior to publication. Defendant renewed his testimony at the start of the medical examiner's testimony. The court overruled the objection, stating:

> "The doctor said that they were intentionally inflicted wounds, injuries to

which the objection was sustained.  The pictures do speak for themselves.
Over the defense objection, although they are graphic to prove intent, they
will be allowed and the doctor can publish them to the jury over the defense
objection.  Again, keeping in mind that the defense is that he did not intend to
kill the victim.  And these photographs do point to something other than an
accidental injury or an injury that was anything, meant to cause anything
but death." .

Photographs of a decedent may be admitted to prove the nature and extent of injuries and the force needed to inflict them, the position, condition and location of the body, the manner and cause of death, to corroborate a defendant's confession, and to aid in understanding the testimony of a pathologist or other witness. *People v. Kitchen*, 159 Ill. 2d 1, 34 (1994).  While photographs may sometimes be cumulative of the testimony of a witness, photographs may also aid the jury in understanding the testimony. *People v. Chapman*, 194 Ill. 2d 186, 220 (2000).   If photographs are relevant to prove facts at issue, the photographs are admissible unless their nature is so prejudicial and so likely to inflame the jury that their probative value is outweighed. *Kitchen*, 159 Ill. 2d at 35.   Even a photograph that is gruesome is admissible if it is relevant to corroborate oral testimony or to show the condition of the crime scene. *People v. Armstrong*, 183 Ill. 2d 130, 147 (1998).  The decision to admit photographs into evidence is a matter left to the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion. *Kitchen*, 159 Ill. 2d at 34.

Defendant contends that the 27 autopsy photographs, showing Diamond's

internal injuries after the medical examiner had cut open her body and removed her internal organs, were not only confusing and misleading, but had no probative value and were extremely prejudicial.

Defendant contends that *People v. Lefler*, 38 Ill. 2d 216 (1967) is instructive. In *Lefler*, defendant was tried and convicted of involuntary manslaughter after his infant son died while in his care. An autopsy was performed on the infant. With respect to the autopsy, the doctor testified that it revealed numerous hemorrhages along the vertebral column near the junction of the ribs, fractures of several ribs, as well as a skull fracture and extensive brain damage. The doctor testified that the rib injuries could have been caused by a crushing type of injury and that the skull fracture and brain damage could have been caused by a blunt force. Over the defendant's objection, the trial court allowed photographs from the autopsy to be published to the jury and projected on a screen approximately 44 by 26 in size. One of the pictures showed the chest cavity after the breast bone and a portion of the ribs and the lungs, heart and main blood vessels had been removed. The other photographs showed the skull and portions of the brain after an area of the skull had been removed. The *Lefler* court held that it was improper for the photographs to be shown to the jury, holding:

> "[T]he testimony was that the body of the deceased bore little superficial evidence of injury and the gruesome nature of the pictures was caused almost entirely by the autopsy procedure. We believe that the pictures had little probative value in view of the detailed testimony by the physician and the fact that the nature and extent of the injuries was not disputed. The pictures were of

12

such a nature as to arouse strong emotions on the part of the jurors and we hold that the court erred in permitting these photographs to be shown to the jury." *Lefler*, 38 Ill. 2d at 222.

We find *Lefler* distinguishable from the instant case. Diamond's autopsy photographs were relevant to illustrate Dr. Cogan's testimony of the extent of the victim's injuries, the manner of death and defendant's intent. Unlike *Lefler*, the autopsy photographs admitted in this case depicted Diamond's injuries at the hands of defendant. Dr. Cogan testified that Diamond had external injuries that consisted of swelling, bite marks and bruising. However, it was the internal injuries that caused her death. Dr. Cogan testified that photographs 27 through 34 depicted Diamond's brain just as he saw it upon examination and showed numerous hemorrhages at various different locations inside her skull. Dr. Cogan testified that those hemorrhages were inconsistent with a fall. Photographs 35 through 49 showed the blood found in Diamond's abdominal cavity and injuries caused to her heart, diaphragm, thymus, liver, anterior chest wall, spine and ribs. With respect to each photograph, Dr. Cogan testified regarding each hemorrhage to each organ, showing significant internal injury, indicative of a large amount of force exerted on Diamond's chest area. In addition, Diamond had a bruise on the back of her heart and a tear in her liver which were consistent with blunt-force trauma and at least one sharp blow to the anterior chest wall. Photograph 50 depicted a fresh hemorrhage to Diamond's left forearm and photographs 52 and 53 depicted a hemorrhage to the buttocks, which could have been caused by someone hitting Diamond with a plastic hanger. According to Dr. Cogan's testimony, many of

these autopsy photographs showed a correspondence between the visible, external injuries and the otherwise concealed internal injuries. Furthermore, Dr. Cogan testified that Diamond's injuries were intentionally inflicted; they were not accidental.

We reject defendant's argument that these photographs were unfairly prejudicial. Although the photographs were graphic, they were relevant to show the location and extent of the injuries, as well as their character and depth. In addition, the photographs aided the jury in understanding Dr. Cogan's testimony. Furthermore, the photographs of the injuries, in conjunction with Dr. Cogan's testimony, aided the jury in determining defendant's intent.

We also reject defendant's argument that the photographs were confusing and misleading. Dr. Cogan testified as to each photograph, explaining each injury.

We conclude the prejudicial effect of the photographs did not outweigh their probative value and the trial court did not abuse its discretion in allowing the jury to view them during deliberations.

Even if the admission of the photographs were deemed erroneous, their admission is, at the very worst, harmless error. An erroneous evidentiary ruling by a trial court requires reversal only where it can be said that the error played a substantial part in the verdict. *See People v. Edwards*, 144 Ill. 2d 108, 170 (1991). The evidence of defendant's guilt in this case was overwhelming. Hence, no such error should be found here. See *People v. Driskel*, 224 Ill. App. 3d 304 (1991).

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

HALL and THEIS, J. J., concur.

14

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

    Plaintiff-Appellee,

  v.

ANDRE RICHARDSON,

    Defendant-Appellant.

No. 1-05-2042

Appellate Court of Illinois
First District, Second Division

April 20, 2010

JUSTICE KARNEZIS delivered the opinion of the court.

THEIS and HALL, J.J., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Diane Cannon, Judge Presiding.

For APPELLANT, Michael J. Pelletier, Deputy Appellate Defender of the State of Illinois (Melissa C. Chiang, Assistant Appellate Defender, of counsel)

For APPELLEE, Richard A. Devine, State's Attorney of Cook County (James E. Fitzgerald and Nancy Colletti, of counsel)